[S. F. No. 19200.    In Bank.    Aug. 23, 1955.]

NADINE GIGLIOTTI, a Minor, etc., et al., Plaintiffs and Appellants, v. JOSEPH ERNEST NUNES, Respondent; RHODA GIGLIOTTI, Cross-Defendant and Appellant.

[S. F. No. 19201.    In Bank.    Aug. 23, 1955.]

ARTHUR MATTS, a Minor, etc., et al., Plaintiffs and Appellants, v. JOSEPH ERNEST NUNES, Respondent; RHODA GIGLIOTTI, Cross-Defendant and Appellant.

James F. Boccardo and Edward J. Niland for Appellants.

Campbell, Custer, Warburton & Britton, Frank L. Custer and W. R. Dunn for Respondent.

SCHAUER, J.—In these two personal injury actions, arising out of a motor vehicle accident and consolidated for trial, the four plaintiffs as well as the cross-defendant Mrs. Rhoda Gigliotti appeal from a judgment entered on a verdict denying recovery against defendant, Joseph Edward Nunes, for the personal injuries and awarding him judgment against Mrs. Gigliotti on his cross-complaint for damages to his truck. We have concluded that plaintiffs and Mrs. Gigliotti are correct in their contention that the trial court committed error prejudicial to them in refusing to give a requested instruction

on the presumption of due care and that the judgment must therefore be reversed, and, further, that no abuse of discretion is shown in the court's refusal to permit Mrs. Gigliotti to file a proffered amendment to her answer to the cross-complaint.

In November, 1947, a 1946 Dodge sedan in which plaintiffs (minors at the time) were riding as guests collided with a truck owned and operated by defendant and cross-complainant, Joseph Nunes. The Dodge was being driven by one Walters who died as a result of injuries received. Nunes' answer to plaintiffs' amended complaints denied negligence generally, and pleaded affirmative defenses of contributory negligence, assumption of risk, imputed negligence of the driver of the Dodge, unavoidable accident, res judicata and estoppel. Plaintiffs' motions to strike the latter two defenses were granted. Nunes also filed a cross-complaint for damages to his truck against the minor plaintiffs in both actions and brought in as an additional cross-defendant Rhoda Gigliotti, mother of two of the plaintiffs. In the cross-complaint it is alleged that Walters, driver of the Dodge, operated it negligently while acting as the servant, agent and employe of the cross-defendants.[1]

At the conclusion of the trial motions for nonsuit on the cross-complaint were granted as to the minor cross-defendants but denied as to Mrs. Gigliotti. Verdict and judgment followed in favor of defendant Nunes and against plaintiffs as to the causes of action alleged in the complaint, and also in favor of Nunes for $300 on his cross-complaint against Mrs. Gigliotti. Motions of plaintiffs and Mrs. Gigliotti for a new trial were denied.

As grounds for reversal plaintiffs[2] urge error in the instructions, and prejudicial misconduct of defendants' counsel. Mrs. Gigliotti also contends that the court should have permitted her to plead or prove that the cause of action stated in the cross-complaint against her was barred by reason of defendant's failure to plead it in a prior action she had brought against him (see Code Civ. Proc., § 439).

---

[1]The record indicates that the Dodge was owned by neither Walters nor Mrs. Gigliotti, but by a third person who is not a party to these actions. The basis of Nunes' recovery against Mrs. Gigliotti on his cross-complaint is his claim that Walters was acting as her agent in driving the Dodge.

[2]In discussing the contentions made on appeal the word "plaintiffs" will also refer to cross-defendant Mrs. Gigliotti unless otherwise indicated in the text of the opinion.

The accident occurred about 3 p. m. at the intersection of Bayshore Highway and Berryessa Road in San Jose. At this point Bayshore runs north and south and is divided into three lanes, each 11 feet wide. On each side is an asphalt shoulder 9 feet wide. Berryessa Road crosses Bayshore at about a 45 degree angle, running from southeast to northwest, and is divided into two lanes, each 9 feet wide. Berryessa widens out into a curve on each side where it joins the shoulders of Bayshore. Approximately 40 feet south of the center of the intersection, railroad tracks cross Bayshore at an angle, running parallel to Berryessa. On each side of the tracks, about 10 or 12 feet distant therefrom, and parallel thereto, are double white lines extending across the center and right lanes of each approach on Bayshore to the railroad crossing.

Defendant Nunes was driving his truck and trailer south on Bayshore, intending to turn left into Berryessa. The truck was about 32 feet in length, and attached to it by a tiebar was a trailer, 23 feet 10 inches in length, equipped with cattle racks. The overall length of the equipment was 59 feet 10 inches, and it weighed more than 19,500 pounds. The Dodge sedan driven by Walters, in which plaintiffs and Mrs. Gigliotti were riding and with an empty horse trailer attached, was proceeding north on Bayshore. Mrs. Gigliotti and one of the plaintiffs were in the front seat beside Walters and the other three plaintiffs were in the back seat. As defendant's truck turned left onto Berryessa it and the Dodge collided. As a result Mrs. Gigliotti and the plaintiffs suffered personal injuries and, as already noted, Walters was fatally injured.

Evidence as to the circumstances of the accident is in sharp conflict. Defendant testified that he had been driving between 12 and 15 miles an hour, in the center lane of Bayshore, and slowed down as he reached the Berryessa intersection. A "good block" from Berryessa he put the mechanical arm signal of his truck out for a left turn, and left it there. He saw two groups of automobiles approaching from the south, the first consisting of two or three cars traveling at an "ordinary speed" of 40 to 50 miles an hour; they were an "ordinary driving distance" apart. The second group consisted of three cars, the first of which was 700 to 800 feet behind the last car of the first group. Defendant paid no attention to the speed of the cars in the second group. He was 200 or 300 feet from the intersection when the first car of the first group reached it. He stopped or nearly stopped when he reached the intersection just as the last car of the first group

passed through it. The first car of the second group was then about 800 feet from the intersection. Defendant put his truck in gear to begin the left turn; just before he started it he saw the Dodge pulling the horse trailer come out from behind the first two northbound cars and pass them in the middle lane; defendant paid no attention to the speed of the Dodge at that time. At a previous trial he testified that he had already made part of the turn before looking to the right again. The Dodge, 600 or 700 feet from Berryessa when it passed the two cars, pulled back into the east lane. When defendant was in the center of the east lane he saw the Dodge about 300 to 350 feet away and estimated its speed at 65 miles an hour. Defendant started to apply his brakes; he knew he could not get out of the way in time. The Dodge did not diminish its speed, but at about the railroad tracks swerved to the right in an attempt to go in front of defendant's truck. The vehicles collided when the front of the truck was about 2 feet east of the Bayshore pavement. Defendant did not know whether his truck was moving or stopped at that moment, but if moving it was at no more than 3 miles an hour. From the time he had seen the Dodge 300 to 350 feet down Bayshore the truck had gone about 8 feet, and from the point where it had commenced the left turn into the east lane it had traveled from 12 to 15 feet at 3 miles an hour to the point of impact. The truck was moved 3 or 4 feet sideways by the impact, and the vehicles came to rest with about three-quarters of the left side of the truck's bumper imbedded in the Dodge. Defendant denied that he had told anyone that he had never seen the Dodge.

One Fowler, testifying for defendant, stated that he was in his car at the stop sign on Berryessa on the east side of Bayshore when he saw defendant's equipment approaching. The left turn signaling arm was straight out, indicating a left turn, although it was pointing downward after the accident. The witness first saw the Dodge about 500 feet south, going about 55 miles an hour, and saw no cars go through the intersection before the Dodge. Defendant's truck was traveling 10 to 12 miles an hour and started to turn with no change in speed. The Dodge was then 150 to 200 feet from the intersection and still traveling at the same speed. As soon as the truck started to turn the witness knew the accident was going to happen because the Dodge was so close that defendant could not get his 60-foot truck and trailer across in front of it. As the truck reached the east lane the witness

saw the Dodge start to swerve to its right; when the front of the truck was in the middle of the east lane the Dodge was 150 or 200 feet from the intersection. A highway patrol officer testified, however, that the witness Fowler told him at the scene of the accident that he, Fowler, could give no information because he had been watching the truck make its turn and had not seen the Dodge; Fowler denied this.

Other witnesses for defendant testified that his signaling device was out for a left turn, that the Dodge had been traveling about 45 miles an hour possibly a block or half a block from Berryessa, and that its speed at the moment of impact was about 50 miles an hour.

Truck driver Whittaker testified, for plaintiffs, that he had been driving east on Berryessa, toward Bayshore, and first saw defendant's truck north of the intersection and traveling at 20 to 25 miles an hour. Defendant's truck slowed down and meanwhile two northbound cars on Bayshore went through the intersection. Just after the second car passed, the truck began to turn left right in front of the Dodge; the Dodge was then about 80 feet south of the intersection, near the railroad tracks, and moving between 40 and 45 miles an hour. The truck, which was going 4 to 5 miles an hour when it began the left turn, picked up speed until it was traveling 8 to 10 miles an hour at the moment of impact. The Dodge veered to the right when the truck began to turn and traveled about 64 feet to the point of impact; it was then going 35 to 40 miles an hour. The left front bumper of the truck hit the left front side of the car and moved the car sideways 4 or 5 feet. The Dodge left tire marks 4 to 5 feet long extending easterly from the point of impact; it also left ''skid marks'' behind it to the south. After the collision the witness asked defendant why he had pulled out in front of the Dodge and defendant replied that he didn't see it.

Two other witnesses testified that they heard defendant state, at the scene of the accident, that he had let two other cars go by but had not seen the Dodge. The witness Penny, also testifying for plaintiffs, stated he was driving behind defendant, was still behind him when defendant's truck started to turn left, and saw no mechanical or arm signal indicating an intent to turn left; just before the truck started the left turn the witness saw the Dodge at about the railroad tracks traveling 40 to 45 miles an hour; he noticed the Dodge because he ''knew it was awful close for the truck to try to

turn''; the left-hand side of the truck hit the Dodge, pushing the car sideways about 3 feet.

Plaintiff Arthur Matts, who was riding in the front seat of the Dodge, testified that the Dodge had been traveling about 40 miles an hour a block or two before the accident; he estimated that the truck was about 150 feet north of the intersection when he first saw it and the Dodge some 150 or more feet south of the intersection; when the Dodge reached the railroad tracks the truck began to turn left right in front of the Dodge; he felt the Dodge swerve to the right and felt the application of the brakes; he was knocked out by the collision and did not see the two vehicles come together or know where the impact occurred. Mrs. Gigliotti placed the speed of the Dodge at about 35 to 40 miles an hour along Bayshore, and also testified that the truck turned left when the Dodge was about 50 feet south of it, near the railroad tracks, and Walters then applied the brakes of the Dodge. Of the other three minor plaintiffs two had no memory concerning the happening of the accident, and the third testified the Dodge was going about 35 miles an hour and was about at the middle of Berryessa Road when the truck turned in front of it.

Although other evidence also favors each of the parties, it is apparent from that summarized above that while the jury's verdict for defendant is not as a matter of law unsupported by the evidence, a verdict in favor of plaintiffs and of Mrs. Gigliotti would find substantial support in the testimonies of defendant, himself, and his witnesses and in the physical circumstances as well as in the evidence produced by and on behalf of the plaintiffs. ■ It bears mention as a matter of common knowledge that one of the most hazardous of all highway traffic maneuvers is a left turn by a ponderous, slow moving vehicle in the face of oncoming traffic.

As ground for reversal, it is first contended that the court erred in refusing to give plaintiffs' requested instruction on the presumption of due care (Code Civ. Proc., § 1963, subd. 4) on the part of Walters, the deceased driver of the Dodge. ■ As expressed in *Scott* v. *Burke* (1952), 39 Cal.2d 388, 394 [247 P.2d 313], it is settled law that where alleged negligent acts and conduct of a decedent are at issue before the court and the ''testimony respecting such acts and conduct necessarily must be produced by witnesses other than the deceased, . . . an instruction that the deceased is presumed to have exercised ordinary care for his own concerns is . . .

proper'' except that if the fact proved by uncontradicted testimony produced by the party seeking to invoke the presumption, "under circumstances which afford no indication that the testimony is the product of mistake or inadvertence . . . is wholly irreconcilable with the presumption . . . the latter is dispelled and disappears from the case.''

■ Although there is no room for the presumption where the driver or other person whose claimed negligence is at issue himself testifies to his actions at the time involved (see *Speck* v. *Sarver* (1942), 20 Cal.2d 585, 587-588 [128 P.2d 16]), the rule is established that if such person be deceased or unable to testify by reason of loss of memory, the fact that other witnesses for the parties testify fully as to the acts and conduct of the allegedly negligent person does not deprive the party relying on the presumption of the benefit thereof unless the testimony which he himself produces "under circumstances which afford no indication that the testimony is the product of mistake or inadvertence . . . is wholly irreconcilable with the presumption sought to be invoked.'' (*Westberg* v. *Willde* (1939), 14 Cal.2d 360, 365-368 [94 P.2d 590]; *Mar Shee* v. *Maryland Assur. Corp.* (1922), 190 Cal. 1, 9 [210 P. 269]; *Chakmakjian* v. *Lowe* (1949), 33 Cal.2d 308, 313 [201 P.2d 801].) Plaintiffs' evidence in the present case is not irreconcilable with the presumption.

The benefit of the presumption has frequently been held available to plaintiffs in wrongful death actions (see *Anthony* v. *Hobbie* (1945), 25 Cal.2d 814, 819-820 [155 P.2d 826]; *Westberg* v. *Willde* (1939), *supra,* 14 Cal.2d 360; *Ellison* v. *Lang Transportation Co.* (1938), 12 Cal.2d 355, 358-360 [84 P. 2d 510]; *Mundy* v. *Marshall* (1937), 8 Cal.2d 294 [65 P.2d 65]; *Smellie* v. *Southern Pac. Co.* (1931), 212 Cal. 540 [299 P. 529]; see also *Mar Shee* v. *Maryland Assur. Corp.* (1922), *supra,* 190 Cal. 1), as well as to one who by reason of loss of memory is unable to testify concerning his conduct at and immediately before the time of the accident. (See *Scott* v. *Burke* (1952), *supra,* 39 Cal.2d 388, 394, and cases there cited.) ■ In an action brought to recover for the wrongful death of Walters the presumption plainly would apply if contributory negligence by Walters were made an issue.

■ Since, however, it likewise is the rule that no presumption of due care on the part of the deceased driver Walters would carry with it the presumption of negligence on the part of defendant Nunes (see *Greene* v. *Atchison, T. & S. F. Ry. Co.* (1953), 120 Cal.App.2d 135, 139-141 [260 P.2d 834,

40 A.L.R.2d 873]), and since in the present case the jury were instructed that any negligence of Walters could not be imputed to plaintiffs, defendant argues that there was no issue of negligence of Walters so far as concerns the minor plaintiffs.

Plaintiffs urge that the conduct of Walters was important, nevertheless, in determining whether defendant's conduct was negligent (i.e., the speed and distance away of the Dodge driven by Walters and what defendant should have observed with respect to it before turning the truck left in front of the Dodge), and that if the due care presumption had been before the jury they might have concluded that Walters was not driving at an excessive or negligent speed, that he was observing the speed limit of 45 miles an hour for a passenger motor vehicle drawing a trailer (established by Veh. Code, § 515.5, as to which an instruction was given), and (in view of the evidence that the Dodge left tire marks some 30 or 40 feet before the point of impact) that Walters must have been less than 100 feet from the point of impact when defendant began his left turn. Hence the jury could have further concluded that defendant was negligent in attempting a left turn of his ponderous and slow moving equipment, approximately 60 feet in length, in front of another vehicle approaching the intersection so closely as to constitute an immediate hazard, and that defendant's negligence in thus violating section 551 of the Vehicle Code (as to which an instruction was given) would be a proximate cause of plaintiffs' injuries.

Although no case had been cited or discovered wherein applicability of the presumption has been affirmed or denied upon a congeries of circumstances exactly the same as those here present, we are convinced that plaintiffs' position accords with the principles which have governed or underlain application of the rule in the cases cited. Certainly nothing in section 1963 of the Code of Civil Procedure refutes that view. Because the evidence, as already shown, was in such sharp conflict as to some of the circumstances of the accident, and would have amply supported a different verdict, the error in refusing to give the due care presumption instruction is prejudicial.

With respect to the cross-defendant, Mrs. Gigliotti, defendant's recovery against her was based upon alleged negligence of Walters, imputed to her, and consequently the presumption was likewise applicable and prejudicial error resulted from refusal to give it.

Defendant, however, urges that the due care instruction of-

fered by plaintiffs was erroneous in that it would have tended to confuse the jury on the matter of burden of proof.[3]

■ Defendant argues that although admittedly the court correctly instructed the jury that the plaintiffs had the burden of proving the allegations of the complaint by a preponderance of evidence, nevertheless by the statement in plaintiffs' proposed instruction that the presumption of ordinary care on the part of Walters ''shall prevail and control your deliberations until and unless it is overcome by satisfactory evidence'' the jury would have understood that defendant had the burden of ''overcoming'' the presumption and that ''overcome'' could only mean by a preponderance of evidence. The due care instruction, however, does not mention either ''burden of proof'' or ''preponderance of evidence,'' and, further, the language attacked by defendant was expressly approved by this court in *Westberg* v. *Willde* (1939), *supra,* 14 Cal.2d 360, 364-365 (see also cases there cited). Thus the failure to give the instruction cannot be excused because of its form.

Other alleged errors urged by plaintiffs as to jury instructions as well as asserted prejudicial misconduct on the part of counsel for defendant may not occur on a new trial and therefore need not be discussed here.

■ Finally, cross-defendant Mrs. Gigliotti contends that the trial court erred to her prejudice in refusing to permit her to plead or prove that the cross-complaint against her was barred by section 439 of the Code of Civil Procedure.[4] After all parties had rested Mrs. Gigliotti asked leave to file an amendment to her answer to the cross-complaint to set forth a second defense alleging that the ''cross-Complainant is es-

---

[3]The instruction as offered reads as follows: ''I instruct you that there is a legal presumption that the deceased, Leonard Walters, was obeying the law at the time and place of the accident in question and that he was exercising ordinary care for his own concerns at the time and place of said accident. This presumption is in itself a species of evidence, and it shall prevail and control your deliberations until and unless it is overcome by satisfactory evidence. This presumption is disputable, but unless it is adequately and sufficiently controverted, you, the jury, are bound to find in accordance with the presumption that the deceased, Leonard Walters, was obeying the law and was exercising ordinary care for his own concerns and was not negligent at the time and place of the accident. It is evidence in the case and is sufficient in and of itself to support a verdict *of* finding on your part that the said deceased was careful at the time and place of the accident in question.''

[4]Section 439: ''If the defendant omits to set up a counterclaim upon a cause arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, neither he nor his assignee can afterwards maintain an action against the plaintiff therefor.''

topped from asserting the matters set forth in said Cross-Complaint under the provisions of Section 439 of the Code of Civil Procedure . . .; that the issues and matters set forth in said Cross-Complaint arise out of the same transaction and accident as was litigated in a prior action entitled, 'Rhoda Gigliotti . . ., Plaintiffs, versus Joseph Ernest Nunes . . ., Defendants,' and numbered 69532 in the files of this Court, and that in said prior action said Cross-Complainant was entitled to, but failed to, assert the matters now set forth in said Cross-Complaint.'' Counsel for Mrs. Gigliotti in offering the amendment stated his recognition that ''it lies within the Court's discretion to permit an amendment of the pleadings, of course,'' and at the same time stated that ''in support of the proof under the amendment, if allowed, I would like to introduce for the limited purpose of this defense and for no other purpose, the action filed, Action No. 69532, which establishes the prior . . . failure of the . . . Cross-Complainant to set up any Cross-Complaint in that action . . .'' The court denied leave to file the amendment.

No abuse of the court's discretion in so ruling appears. The record shows that on two occasions during the trial counsel for Nunes offered the file of the prior action between Mrs. Gigliotti and Nunes in evidence in an attempt to prove that the judgment in Nunes' favor therein was res judicata on the issue of Nunes' negligence and actually adjudicated negligence on the part of Walters, driver of the Dodge. On both occasions counsel for Mrs. Gigliotti objected vigorously on the ground that the files or ''anything in connection with the previous trial . . . is incompetent, irrelevant and immaterial . . .'' On the first occasion the court pointed out that the prior judgment was likewise consistent with no negligence on the part of either Nunes or Walters and denied the offer of proof. On the second occasion the court reserved its ruling, with the comment that if it allowed the records of the prior action in evidence it might force Nunes out of court on his cross-complaint, ''as apparently it is conceded'' that the prior action arose out of the same accident. Counsel for Mrs. Gigliotti did not then take advantage of the court's comment to attempt to promptly amend her answer to the cross-complaint, but instead waited until all of the evidence was in and both sides had rested. Even if we assume that if the file had been permitted in evidence Mrs. Gigliotti could have taken advantage of it to establish that Nunes' cross-complaint against her was within the scope of the issues in the

prior action and so was barred (see *Blumenthal* v. *Liebman* (1952), 109 Cal.App.2d 374, 378-379 [240 P.2d 699]), nevertheless, under the circumstances we cannot hold that as a matter of law the trial court transgressed the broad area of its discretion in refusing permission to file the amendment.

For the reasons above stated the judgment is reversed.

Gibson, C. J., Shenk, J., and Carter, J., concurred.

TRAYNOR, J.—I dissent.

Defendant Nunes had the burden of proving that the deceased driver Walters was negligent. Accordingly, there is no basis for invoking a presumption against defendant that Walters was exercising due care. (See *Speck* v. *Sarver*, 20 Cal.2d 585, 590 [128 P.2d 16], dissenting opinion; *Scott* v. *Burke*, 39 Cal.2d 388, 402 [247 P.2d 313], dissenting opinion.)

Respondent's petition for a rehearing was denied September 21, 1955. Edmonds, J., and Traynor, J., were of the opinion that the petition should be granted.