[Civ. No. 5884. Fourth Dist. June 30, 1959.]

CONSUELO DE RUIZ, as Administratrix, etc., Respondent, v. JACK RUDY TRUCKING COMPANY (a Corporation), Appellant.

SARA SANDOVAL, Respondent, v. JACK RUDY TRUCKING COMPANY (a Corporation), Appellant.

Dickenson, Sattinger & McKee for Appellant.

Boccardo, Blum, Lull, Niland & Teerlink and Edward J. Niland for Respondents.

GRIFFIN, P. J.—Defendant and appellant Jack Rudy Trucking Company, a corporation, appeals from judgments rendered against it in these two consolidated actions wherein plaintiff and respondent Consuelo de Ruiz, as administratrix of the estate of Esther Juarez Garcia, deceased, recovered judgment for $75,000, subsequently reduced to $60,000, on a motion for new trial, and the other plaintiff and respondent Sara Sandoval obtained a judgment for $5,000 for her personal injuries and $20,000 for the death of her 8-months-old child, Julian K. Sandoval, which latter judgment was reduced to $15,000 on a similar motion.

The facts, though somewhat in dispute, when viewed in a light most favorable to plaintiffs, are that about 4:30 on the morning of January 31, 1955, plaintiffs, together with five other passengers, were riding in a 1948 Chevrolet station wagon in an easterly direction on United States Highway Number 99, near its intersection with Riverside Drive, close

to the city limits of Rialto, in San Bernardino County. Esther Garcia was driving. The station wagon was owned by Sara Sandoval, who was seated in the middle of the front seat with her 8-months-old child in her lap. To her right was a male passenger. The other three passengers were in the rear seat and their luggage was on the bed of the station wagon behind that seat. The weather was clear and dry. The station wagon had been driven to this spot by Sara and parked off of the two-lane south roadway on the shoulder to change drivers with Esther Garcia. Two police officers, seeing the parked car without lights, came alongside of it in their car between it and the shoulder of the highway and conversed with the occupants and then proceeded on easterly to the near-by intersection. After the police car proceeded about 250 yards the officers looked back and observed headlights coming from the shoulder into the southerly lane of the highway. They saw no other lights. When they looked again a few seconds later the lights had disappeared. They crossed the highway, drove back toward the station wagon, and found that a collision had occurred, and also found that a GMC tractor and Brown trailer 60 feet in length, weighing about 25,000 pounds, had overtaken or collided into the rear portion of the station wagon, and the engine of the truck pushed the body of the station wagon up toward the front seat of the station wagon, pushing it down the highway for a distance of approximately 204 feet. There was no evidence of brake marks of either vehicle prior to impact. The passengers were folded up in the front portion of the station wagon and had to be extricated.

Sara suffered severe injuries and a possible herniated disk injury. Her minor son and Esther Garcia were killed.

The defendant truck driver testified he was traveling easterly on this same highway that night en route to Yuma, Arizona; that when he first saw the station wagon it was parked on the shoulder of the highway, facing east, and it was then approximately 700 to 800 feet in front of him and all of its lights were off; that he was traveling about 45 to 49 miles per hour; that about that time he observed an oncoming truck, approaching on the other side of the highway, which he recognized as a Watson Brothers truck; that the driver of this truck flicked his spot-light toward him as a signal that police officers were near-by; that he returned the signal in the same manner; that when he turned his gaze to the highway the station wagon was directly in front of him (about 5 feet); that he was

horror-stricken; that he had no time to apply his brakes before hitting it; that he thought it was pulling onto the highway at an angle and the left front of his truck hit the left rear portion of the station wagon; and that he never saw a taillight on the station wagon. He told the officer after the accident that he did not know whether or not the taillights on the station wagon were burning. He then testified that his own headlights were reflecting on the back of the station wagon; and that he did not mean to imply that he could have avoided striking the station wagon had he seen the taillights at that time. In a signed statement he said:

"I was traveling east on 99 about 45 to 49 miles per hour. I first noticed car was parked over on the right shoulder with the lights off about 400 or 500 feet ahead. I looked over at a truck coming on the westbound lane and started to give him the light. When I looked back ahead, I was sitting right on him. I mashed down on the brake as soon as I saw him. Then I hit him. My brakes did not take hold."

The driver of the other truck testified he observed the police car and defendant's truck about one-half mile from him; that when defendant's truck was about one-fourth mile from him he signaled with the spotlight as indicated and defendant truck driver responded; that when the lights of plaintiffs' station wagon came on he observed the lights of defendant's truck about 700 feet back of it; that shortly thereafter he observed the lights of defendant's truck catch up to plaintiffs' station wagon and hit it from the rear; that the witness stopped, took the driver of defendant's truck aside and asked what happened; and that defendant driver told him he was looking at the other truck. Evidence of marks on the pavement and debris were indicated by different witnesses. Portions of the station wagon were found up to 150 feet east of the point of impact.

Sara Sandoval testified that after the police car drove away they remained there a short time; that the lights on her car were turned on and she turned to see if any car was approaching from the rear; that she saw two lights from far back, "five big city blocks," and she believed it was safe enough to drive onto the highway; that the taillight on their car was burning; that Esther was driving easterly on the outer lane of the highway about 30 miles per hour and that she then lay back and closed her eyes and soon thereafter the station wagon was struck by the defendant's truck, resulting in the injuries and deaths described.

 A mere recitation of the facts fully supports the jury's

finding of negligence of defendant trucking company. It cannot be said that plaintiffs were guilty of contributory negligence as a matter of law, as claimed. (*Anthony* v. *Hobbie,* 25 Cal.2d 814, 818 [155 P.2d 826].)

█ Next, defendant argues that it was prejudicial error to give plaintiffs' instruction on the presumption of due care as to deceased, Esther Garcia. It is apparently made on the claim that the evidence produced by plaintiffs was wholly unreconcilable with such a presumption, and therefore it was dispelled. This argument is likewise untenable. (*Gigliotti* v. *Nunes,* 45 Cal.2d 85 [286 P.2d 809].) █ It is also claimed that the added statement that when a conflict exists it is the duty of the jury to weigh the presumption against the contrary evidence and determine which, if either, preponderates, was error in that it required the jury to find that the presumption must be overcome by defendant by a preponderance of the evidence on all issues, citing *Gigliotti* v. *Nunes, supra.* The instruction, as given, is not susceptible of such construction when considered in connection with other instructions given on the subject of burden of proof.

The next instruction questioned involves a similar instruction given, criticized, and found faulty in one respect in *Pennington* v. *Southern Pac. Co.,* 146 Cal.App.2d 605, 618 [304 P.2d 22]; and BAJI 25, based on section 1844 of the Code of Civil Procedure, pertaining to the credibility of one witness against a number. The court in that case held it was not prejudicial error to give it. Plaintiffs concede it is technically incorrect under that decision, but claim no prejudicial error resulted. We have reached the same conclusion. (*Rideau* v. *Los Angeles Transit Lines,* 124 Cal.App.2d 466, 470 [268 P.2d 772]; *Alvak Enterprises* v. *Phillips,* 167 Cal.App.2d 69, 75 [334 P.2d 148].)

█ Objection is made to given instructions Numbers 29 and 30 in reference to contributory negligence of the driver of the station wagon. Number 30 was offered by defendant and, although it was limited to the driver of the station wagon and did not cover the question of the claimed contributory negligence of Sara Sandoval, defendant cannot now complain of an instruction offered by it. █ Number 29 was a proper instruction relating to the driver of the station wagon. The court did give a general instruction to the effect that if Sara Sandoval was herself negligent, she would be barred from any recovery. Contributory negligence, both personal and

imputed as to both parties, was sufficiently covered. No prejudicial error resulted.

 The court failed to give defendant's added requested instruction in reference to BAJI 175, to the effect that no award should be given to the minor children for sorrow, mental distress, or grief suffered by reason of the death of Esther Garcia, nor for her suffering prior to death. As to Sara Sandoval the court did give, at defendant's request, an instruction to this effect as to the loss of her child. A similar proffered instruction as to plaintiff administratrix was refused as being otherwise covered. Defendant argues that this was an invitation to the jury to consider it in that case. While the instruction might well have been given so as to fully cover both plaintiffs, the court in these consolidated cases did state generally that its instructions did apply with equal force in each of the actions and told the jury that in determining the pecuniary loss of plaintiffs it could consider only the financial support, if any, and the pecuniary value of the security, comfort, care, protection and right to receive support, which each plaintiff has lost by reason of the deaths. We conclude no prejudicial error resulted in the failure to give the proffered instruction.

 Another of defendant's proffered instructions (BAJI 180) was refused as covered. In *Rasich* v. *Gladding McBean & Co.*, 90 Cal.App.2d 241 [202 P.2d 576], it was held error to refuse such an instruction. Defendant admits that perhaps if the failure to give this instruction was the only error, or a different factual situation existed, such failure might not, of itself, be considered prejudicial. The court did, after reciting the factual situation, give an instruction that the jury should first determine the question of liability before undertaking to fix damages, if any. In subsequent instructions the court emphasized the statement in other instructions that "If you find in favor of plaintiffs . . . then you should fix damages, if any." The court further cautioned the jury not to infer from anything said by the court that it was inclined to favor the claims or position of either party. When it is made clear, as in the instant case, based upon the evidence here produced, that any award of damages was contingent upon the jury first finding liability, it cannot be said that the failure to give the proffered cautionary instruction resulted in prejudicial error. (*Hoagland* v. *Chargin*, 134 Cal.App.2d 466 [286 P.2d 931].)

 Defendant submitted an instruction which was refused. It was to the effect that if Esther Garcia violated sections 514, 543 or 544 of the Vehicle Code such conduct con-

stituted negligence as a matter of law. Defendant claims error in this respect. The trial court did instruct on the provisions of a number of the sections of the Vehicle Code offered by both plaintiffs and defendant, including those above mentioned. It then said that conduct in violation of any of those sections constituted negligence *per se,* and required a presumption that the person who had so conducted himself or herself was negligent. It then went on to point out that such presumption was not conclusive, but may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence, and ''in this connection you may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so unless causes, not of his own intended making, induce him, without moral fault, to do otherwise.'' It further provided that a violation of law is of no consequence unless it was the proximate cause or contributed as a proximate cause to any injury or death found by it to have been suffered by plaintiffs.

Defendant argues that under the test enunciated in *Satterlee* v. *Orange Glenn School Dist.,* 29 Cal.2d 581 [177 P.2d 279] ; and *Ornales* v. *Wigger,* 35 Cal.2d 474 [218 P.2d 531], there was no evidence of any cause or thing beyond the control of Esther Garcia which would excuse or justify her violation of these sections and therefore it was error to give the instruction in this form. ■■■ This proposition was fully discussed in the late case of *Alarid* v. *Vanier,* 50 Cal.2d 617 [327 P.2d 897], where the broad statement is made that ''the presumption of negligence which arises from the violation of a statute is rebuttable and may be overcome by evidence of justification or excuse.'' It specifically disapproved the inconsistent language in the Satterlee and Ornales cases relied upon by appellant. The facts of the Alarid case, *supra,* concern a claimed brake failure. Sections 670 and 679 of the Vehicle Code were involved. Therein the court set forth many cases supporting the general rule pertaining to ''ignorance of fact'' such as ''unlighted taillight'' and ''brake failure,'' declaring a violator could have fulfilled his duty if he had exercised ordinary care. ■■■ The court then set forth what it believed to be the correct test, *i.e.,* ''whether the person who has violated a statute has sustained the burden of showing that he did what might be reasonably expected of a person of ordinary

prudence acting under similar circumstances who desired to comply with the law.'' ▮ The trial court, in the instant case, gave a proper general instruction patterned after the holding in the Alarid case. No prejudicial error appears in giving it. (*Kabzenell* v. *Stevens,* 168 Cal.App.2d 370 [336 P.2d 250]; *Schoenbach* v. *Key System Transit Lines,* 168 Cal. App.2d 302, 305 [335 P.2d 725].)

The jury was told, in effect, that if the Vehicle Code sections involved were found to be violated, that the presumption of negligence did exist, unless overcome, as indicated.

▮ Even assuming, without deciding, that the giving of an instruction including this latter provision was improper as not here being applicable, and assuming further without deciding that there was insufficient testimony concerning justification, we are convinced, under the overwhelming and convincing evidence here produced, such claimed error, if any, in giving that portion of the general instruction and refusing defendant's proffered instruction, was not prejudicially erroneous, justifying a reversal of the case. (*Curtis* v. *Q. R. S. Neon Corp., Ltd.,* 147 Cal.App.2d 186, 196 [305 P.2d 294].) Under the general instruction given, defendant, under claimed violations charged against it, was given the benefit of this same provision.

Lastly, defendant contends the size of the verdicts rendered and the amounts to which they were reduced, indicates that they were the result of sympathy, passion and prejudice. ▮ As to the $5,000 judgment the medical evidence shows Sara Sandoval had injuries to her neck, ribs, legs, wrist, and lower back. A scar was left on her wrist and at the time of trial she was still suffering from pain in her back due to a possible herniated disk, as a result of the accident. She was unable to work for a period of one year and three months. Her claimed loss of earnings, based on $40 a week for a season of eight months amounted to approximately $1,300. This award does not appear to be excessive. (*Connolly* v. *Pre-Mixed Concrete Co.,* 49 Cal.2d 483, 488 [319 P.2d 343].) ▮ There was some showing made on the motion for new trial by affidavit of defendant's counsel that after trial he discovered new evidence. It recites that Sara Sandoval was admitted to the hospital in August, 1957; that its records disclose she was involved in an automobile accident in January, 1955; that she complained of pain in her back for two months after the accident and it then disappeared; and that about August 3, 1957, while working in a restaurant, she lifted

a pan of dishes and injured her back. He then alleges these records will show the pains she complained of after the instant accident were directly caused by her previous injuries; and that affiant did not know of this record until January 20, 1958, after the judgment was entered. Error is claimed in this respect. Plaintiffs claim these allegations are pure hearsay and conclusions of the pleader; that there was no sufficient showing of due diligence to discover said new evidence; and that the court was justified in rejecting it. We conclude that the court did not abuse its discretion in denying the motion upon the showing made. (*Smith* v. *Schwartz*, 14 Cal.App.2d 160, 167 [57 P.2d 1386].)　As to the $15,000 judgment for the death of Sara's child, this amount does not appear to be excessive. (*Couch* v. *Pacific Gas & Elec. Co.*, 80 Cal.App.2d 857, 867 [183 P.2d 91] ; *Daggett* v. *Atchison T. & S. F. Ry. Co.*, 48 Cal.2d 655 [313 P.2d 557].) The trial court fully weighed this question on the motion for new trial and concluded that the amount of the judgment was fair and reasonable. This fact is entitled to have considerable weight. (*Johnston* v. *Key System Transit Lines,* 167 Cal.App.2d 383, 388 [334 P.2d 243].)　This same conclusion may be reached in respect to the $60,000 judgment. No prejudicial error appears in this respect.

Judgments affirmed.

Mussell, J., and Shepard, J., concurred.