[Civ. No. 459. Fifth Dist. July 26, 1965.]

GALE CHRISTENSEN, a Minor, etc., et al., Plaintiffs and Appellants, v. EDWARD F. MALKIN et al., Defendants and Respondents.

Pearlson & Pearlson and Herbert D. Pearlson for Plaintiffs and Appellants.

Wilson & Wilson and William H. Wilson for Defendants and Respondents.

BROWN (R. M.), J.—This appeal originated in an action brought by plaintiff John Dale Christensen for damages for his personal injuries, and by John and his two minor children for damages for the wrongful death of John's wife. A jury rendered a general defense verdict; judgment was entered accordingly; plaintiffs' motion for a new trial was denied; and this appeal was then taken.

On July 8, 1960, plaintiff and his wife arrived at the home of a Mrs. Armstrong (now married to defendant Malkin); all three visited a neighbor and then returned to the Armstrong home at about 5:30 p.m. Plaintiff went out and bought a bottle of whiskey and the three had "a couple" of highballs. The defendant Malkin arrived at the Armstrong house at about 7 or 7:30 p.m. and had a "few sips" from Mrs. Armstrong's drink. All four individuals then went in the Christensen car to a steak house for dinner, where they had one or two rounds of cocktails, the defendant Malkin drinking martinis. With dinner the four individuals split a pint bottle of wine. After dinner the party transferred to an automobile owned by The Bowlium and driven by defendant Malkin, and went to a resort at Mt. Baldy for an evening of dancing and drinking. On the way to the resort they stopped at another tavern where each had one alcoholic drink. They then arrived at the Ice House Canyon Resort near Mt. Baldy where another round of drinks was served. The two men went

to the bar and each had another highball. Mr. Christensen returned to the table while Mr. Malkin remained at the bar and had a lengthy conversation of one and one-half hours or so with Mrs. Christensen. According to Mr. Christensen's testimony, he observed his wife and Mr. Malkin each having a highball glass. Before the party left the resort Mr. Malkin testified that a final round of drinks was had at the table shortly before 2 a.m., and this was his fourth drink at this place. Mr. Christensen testified that in addition to the round of drinks, three "straight shots" of liquor were placed in front of Mr. Malkin, making a total of seven drinks served at that time. According to Mr. Christensen, Mr. Malkin drank his highball and the three "straight shots" within the space of approximately 15 minutes before closing time. There was a conflict in the evidence as to whether or not the ladies were present when the "straight shots" were served and consumed or whether they were in the restroom, Mr. Malkin denying that there were three "straight shots."

The party proceeded to leave the resort and enter the automobile. No one appeared to be concerned over the ability of Mr. Malkin to drive; no objection or comment was made by anyone. While the Christensens were familiar with the road, having been in the area on a number of prior occasions, Mr. Malkin had been over the road on one prior occasion but this was the first time he had driven over it. The car was apparently in good mechanical condition. Mr. Christensen testified that he did not observe anything unusual about Mr. Malkin, could not detect by looking at him that he was intoxicated, and that he had no concern about Malkin's ability to drive.

It was Mr. Malkin's testimony that while engaged in conversation driving down the hill after some remark was made to him he turned his head toward the back seat to reply to the Christensens and that when he looked back at the roadway he saw the curve but it was too late and he lost control of the car. This curve was approximately 2½ miles from the resort. It was part of a narrow, mountain-type road on a grade having several curves. According to testimony of the highway patrol officer, there was a sign approximately 300 feet north of the accident scene showing an arrow with a curve and a signpost saying "Slow to 25"; that there were skid marks from the center of the road running to the edge of the roadway leading in the direction of the vehicle which

was lying some 15 feet beyond the roadway in a creek. There was some conflict in the evidence as to whether or not the car had started to go off the road about one-half mile up the road from the point of the accident at another curve. Mrs. Armstrong and Mr. Malkin denied that the car ever left the road except at the time of the accident itself, or that Mr. Christensen had at the previous curve warned him to slow down.

Two officers of the highway patrol testified that they interviewed Mr. Malkin at the hospital at about 5 a.m. and that they formed the opinion that he was intoxicated and his ability to drive was impaired. One of the officers testified that Mr. Malkin seemed to think the whole thing was hilarious, while Mr. Malkin later testified that he was merely keeping up the spirits of Mrs. Armstrong when she learned that Mrs. Christensen had been killed in the accident.

### Assumption of Risk

Plaintiffs contend that the trial court erred in instructing the jury on the doctrine of assumption of risk, though they concede they requested instructions on that subject and the court gave some of them. The plaintiffs-appellants may not now complain on appeal that the court gave instructions which they requested.

It is argued that there is no evidence from which the jury as a matter of law could conclude that the decedent had actual knowledge that Mr. Malkin was intoxicated, citing *Hartlerode* v. *Edwardsen,* 219 Cal.App.2d 517 [33 Cal.Rptr. 346]; *Peterson* v. *Geltz,* 118 Cal.App.2d 794 [258 P.2d 875]; and *Vierra* v. *Fifth Ave. Rental Service,* 60 Cal.2d 266 [32 Cal.Rptr. 193, 383 P.2d 777].

The evidence does not have to be such that a jury must be able to conclude as a matter of law that Mrs. Christensen knew Malkin was intoxicated. Each litigant is entitled to have instructions submitted to the jury on all theories of the case which find support in the pleadings and the evidence. (*Phillips* v. *G. L. Truman Excavation Co.,* 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33].) Thus, if there is sufficient evidence to support the giving of instructions on a particular subject, it is a question of fact for the jury's determination whether the evidence will support a judgment. Such actual knowledge may be established by circumstantial evidence from which the knowledge of the fact in question can be reasonably inferred. (*Oil Workers International Union* v. *Superior Court,* 103 Cal.App.2d 512 [230

P.2d 71]; *Katz* v. *Bedford,* 77 Cal. 319, 323 [19 P. 523, 1 L.R.A. 826].) The same argument has been rejected in some cases. In *Cowan* v. *Bunce,* 212 Cal.App.2d 48, 54 [27 Cal. Rptr. 758], it was argued that the passenger in an automobile had no knowledge of the danger incident to riding in the vehicle of defendant Braden. There was evidence tending to establish that Braden was intoxicated, that plaintiff knew of the intoxication having spent some three hours with him before the accident and having visited two cafes with him; that, after visiting the last cafe plaintiff voluntarily entered the Braden automobile. Plaintiff claimed that there was no evidence to show that he had knowledge of the danger incident to the risk. The appellate court rejected the contention and held that the giving of instructions on assumption of risk was proper.

In *Godinez* v. *Soares,* 216 Cal.App.2d 145 [30 Cal.Rptr. 767], the appellant argued that since the deceased had only a "few drinks" with the driver, there was no evidence that the deceased had any indication that the driver's faculties were impaired. The appellate court stated that the evidence disclosed that the decedent and the driver "had stayed in Jack's Place for about 45 minutes" and stated at pages 150-151: "It is well settled that a guest is precluded from recovery when he knows that his host has been drinking and knows or should have known that the host is incapable of careful driving. . . ."

In the last cited case, however, the instruction dealt with contributory negligence of the appellant.

▮▮▮ The Christensens were in the immediate company of Mr. Malkin for approximately seven hours and during the course of the evening had been in close proximity. The Christensens knew that Mr. Malkin had been consuming alcoholic drinks during that evening, and Mrs. Christensen had danced with him just shortly before they left the resort and thus was in a position to have knowledge of the state of his sobriety or intoxication.

### Instructions on Presumption of Due Care

▮▮▮ Plaintiffs contend that the trial court erred in refusing their proffered instructions to the effect that the law presumes that the decedent, Mrs. Christensen, was exercising due care. These two instructions, from examination, appear to be identical, being of the approved form of BAJI No. 135-A (Revised).

The problem before us is whether or not the court erred in determining that the plaintiffs were not entitled to any instructions on the presumption.

For the plaintiffs' position to be sustained, they must show: (1) that they were entitled to the benefit of the presumption at the time they entered upon the trial; (2) that the presumption must not be deemed to have disappeared from the case prior to the charge to the jury; and (3) that the rejection of the requested instruction must have resulted in prejudice to the plaintiffs' rights. (*Gong* v. *Firemen's Ins. Co.,* 202 Cal.App.2d 686, 691 [21 Cal.Rptr. 110].)

As was said in *Gigliotti* v. *Nunes,* 45 Cal.2d 85, at page 93 [286 P.2d 809]: "The benefit of the presumption [of due care] has frequently been held available to plaintiffs in wrongful death actions. . . ."

The case of *Mar Shee* v. *Maryland Assurance Corp.,* 190 Cal. 1 [210 P. 269], sets out a test for determining when a disputable presumption disappears from the case. At page 9 of the opinion, the court stated the true rule to be: ". . . a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case." (See also *Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729 [306 P.2d 432]; *Gigliotti* v. *Nunes, supra*; *Westberg* v. *Willde,* 14 Cal.2d 360 [94 P.2d 590]; *Engstrom* v. *Auburn Auto. Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059]; *Mundy* v. *Marshall,* 8 Cal.2d 294 [65 P.2d 65]; *Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 P. 529]; and *Rogers* v. *Interstate Transit Co.,* 212 Cal. 36 [297 P. 884].)

However, there is no hard and fast formula which is of aid in applying the rule. Each case stands on its own facts.

The plaintiffs place their principal reliance on the case of *Gigliotti* v. *Nunes, supra,* but seem to feel that the case establishes a new rule which they refer to as the "Gigliotti doctrine." In *Gigliotti,* Mrs. Gigliotti and three minor children were riding with one Walters in an automobile to which a trailer was attached. It collided at an intersection with a ponderous rig owned and operated by Nunes who was engaged in making a left turn. Walters was killed. The action was brought in behalf of the minors. Nunes interposed the

defenses of contributory negligence and assumption of risk. The children and Mrs. Gigliotti requested and the court refused an instruction that Walters, the deceased driver, was exercising due care at the time of the accident. There was a defense judgment. Though the court in this case held that it was error to refuse to give the due care presumption instruction and the error was prejudicial, it was stated at pages 92-93: ''[I]t is settled law that where alleged negligent acts and conduct of a decedent are at issue before the court and the 'testimony respecting such acts and conduct necessarily must be produced by witnesses other than the deceased, . . . an instruction that the deceased is presumed to have exercised ordinary care for his own concerns is . . . proper' except that if the fact proved by uncontradicted testimony produced by the party seeking to invoke the presumption, 'under circumstances which afford no indication that the testimony is the product of mistake or inadvertence . . . is wholly irreconcilable with the presumption . . . the latter is dispelled and disappears from the case.' ''

Thus, the court was simply applying the *Mar Shee* rule to the facts of the case at hand in determining that the instruction should have been given because the evidence showed a sharp dispute in almost all of the factual circumstances surrounding the accident itself and was thus not irreconcilable with the presumption.

 With reference to applying the rule to the facts of this case, Mrs. Armstrong, Malkin and Mr. Christensen all testified that, just before the party left the Ice House Canyon Resort, the two ladies went to the restroom, during which time Mr. Malkin was supposed to have consumed three straight shots in the presence of all except Mrs. Christensen.

The uncontradicted evidence of Mrs. Christensen's own indulgence in drinking intoxicating beverages during the entire evening, her knowledge of the amount of drinking indulged in by Mr. Malkin while in her company, her knowledge of the mountainous nature of the road to be traveled, and her willingness to ride with Mr. Malkin under such circumstances without protest or objection, constituted sufficient evidence of the facts contrary to the presumption.

The plaintiffs failed to establish such a "sphere" or "field" within which the presumption may operate. Whether the evidence establishes such a foundation is, in the first in-

stance, a matter for determination by the trial judge. (*Tice* v. *Kaiser Co.*, 102 Cal.App.2d 44, 52 [226 P.2d 624].)

The trial judge in this case correctly determined that such a foundation, sphere or field had not been shown by the plaintiffs. While it can be pointed out that death has sealed the lips of Mrs. Christensen, the actions and the conduct of the decedent immediately prior to the accident are known. Her acts and conduct were fully disclosed by the testimony of Mr. Christensen as well as the other witnesses, and the jury could well determine from the testimony whether in fact the decedent did exercise ordinary care. Thus there is no room for application of the presumption. (*Tice* v. *Kaiser Co.*, supra; *Speck* v. *Sarver*, 20 Cal.2d 585, 588 [128 P.2d 16]; *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36 [297 P. 884].)

In the last cited case above, *Rogers* v. *Interstate Transit Co.*, the court said at pages 38-39: "Whatever the rule may be when evidence contrary to the presumption is produced by the adverse party, it is well established in this state that a presumption in favor of a party is entirely dispelled by the testimony of the party himself or of his witnesses. [Citing *Mar Shee*.] In such a case it was error, we think, for the court to instruct the jury as to the presumption that the plaintiff took ordinary care of his own concerns."

But even if it was held to be proper to give such instruction, such failure was not prejudicial. In *Davis* v. *Ward*, 219 Cal.App.2d 144, at page 150 [32 Cal.Rptr. 796], the court said: "Evidence relating the conduct of the plaintiff driver was admissible to the extent that it might have aided in determining whether, considering it and all other circumstances, the conduct of the defendant was negligent. [Citations.] The presumption that the plaintiff driver, who now is deceased, exercised due care at the time in question, was evidence which might have been considered for this purpose. (*Gigliotti* v. *Nunes*, 45 Cal.2d 85, 94 [286 P.2d 809].)"

The court further said at page 151 that the refusal to give such an instruction "should be declared prejudicial only if the court on appeal, after an examination of the entire cause, including the evidence, is of the opinion that it is reasonably probable that the verdict would have been different if the instruction had been given," citing *People* v. *Watson*, 46 Cal.2d 818, 837 [299 P.2d 243]. The court went on to say that, "Where it is contended that an error in refusing to give an instruction is prejudicial, the appellate court is author-

ized to evaluate the evidence as it is related to the probability of a different result in the absence of such error.''

Under the circumstances, it is not reasonably probable that giving the instruction which was refused would have caused the jury to find otherwise or influenced its decision on the issue of defendant's negligence.

On reading the transcript, we are impressed with the fact that the verdict of the jury could have been based on the lack of negligence of the defendant.

In *Rather* v. *City & County of San Francisco*, 81 Cal. App.2d 625, 636 [184 P.2d 727], the court said : ''It is settled law that 'a general verdict imports findings in favor of the prevailing party on all material issues, and if upon such a verdict one issue alone is sustained by the evidence and is not affected by any error, the want of evidence to sustain the finding on the other issues or any errors committed in regard to them cannot be prejudicial.' (2 Cal.Jur., p. 1029. See, also, 24 Cal.Jur., p. 885.)

''There is, of course, abundant evidence to sustain the implied finding of contributory negligence, and appellant does not challenge such sufficiency. Indeed, in conceding it he says that no such issue is involved.'' (See also *Gillespie* v. *Rawlings*, 49 Cal.2d 359, 369 [317 P.2d 601] ; *Collier* v. *Los Angeles Ry. Co.*, 60 Cal.App.2d 169, 176 [140 P.2d 206] ; 1 Stanbury, Cal. Trial and Appellate Practice, § 622, p. 681.)

### Other Instructions Given

Plaintiffs contend that the following language embodied in one of the instructions contains an erroneous statement of the law :

''Was the plaintiff, or Jane Christenson chargeable with contributory negligence which proximately contributed to their respective injuries?

''If you find that they were, you will return a verdict for the defendants, but if you find that they were not, you must find on a fourth question, namely :

''Did either the plaintiff or his wife, Jane Christenson, assume the risk of their respective injuries.

''If you find that they did, your verdict must be for the defendants, . . .'' (Modification of BAJI No. 113.)

It is claimed that under this instruction if the jury found that Mr. Christensen was contributorily negligent or guilty of assumption of the risk, all of the plaintiffs, including the two minor plaintiffs, were deprived of recovery, and likewise,

if the jury found that the decedent, Mrs. Christensen, was guilty of contributory negligence or assumption of risk, all of the plaintiffs, including Mr. Christensen, were precluded from recovery. It is the use of the disjunctive word "or" to which plaintiffs object.

The court instructed the jurors that they were not to single out any certain sentence or any individual point or instruction, but that they were to consider all of the instructions and as a whole. (BAJI No. 2.)

Instruction No. 17 (BAJI No. 103.3 (Revised)) clarifies the above instruction in stating that if Mrs. Christensen was guilty of negligence no recovery for damages may be made by her heirs, and Instruction No. 24 (Modification of BAJI No. 145-B) also is a clarification, stating that the surviving husband claimed damages in two capacities—as widower and heir, and as one suffering personal injuries; and states that if the deceased was negligent and such negligence was the proximate cause of her death or that if the deceased assumed the risk of her injury, the plaintiff and the two minor children as heirs may not recover, and that if the plaintiff himself was negligent and that was the proximate cause of his injury he may not recover for such injury.

The plaintiffs embark upon a general, broadside attack on numerous instructions without citing any cases. In Instruction No. 41 the jury was told that the issues were (1) wilful misconduct on the part of defendant Malkin at the time of the accident; and (2) intoxication of Malkin. The jury was told that if the answer to both of these questions was in the negative the verdict should be for defendants, but that if it answered either question in the affirmative, it would then have other issues to resolve.

In an instruction given which was requested by plaintiffs (BAJI No. 209-C) the jury was advised that the plaintiffs had claimed both intoxication and wilful misconduct and that if it should find in plaintiffs' favor "as to either the issue of intoxication or that of wilful misconduct . . . they will be entitled to recover."

Plaintiffs also complain of Instruction No. 35 (BAJI No. 209-J) which sets out the difference between wilful misconduct and negligence. They contend that the instruction in the form given does not take into consideration the fact that intoxication is an alternative basis for plaintiffs' case; and that, in the form given, it appears to take that issue away from the jury. In a note appearing in BAJI, page 697, it is

said: "This instruction is premised on the assumption that no question of intoxication is involved. Should such an issue exist, a slight modification will prevent this instruction from appearing to take that issue from the jury."

This does not take away from the jury the issue of intoxication. It simply defines wilful misconduct. The issue of intoxication was presented to the jury in instructions requested by plaintiffs, BAJI Nos. 209-C and 209-N.

Plaintiffs also complain of the second sentence contained in Instruction No. 37 (BAJI No. 209-0), which reads: "The same effect under the law also follows when, after having entered a vehicle, a guest learns that the driver is intoxicated, and the guest having a reasonable opportunity to alight (at a reasonably safe place) fails to do so, thus voluntarily accepting the risks incident to the driver's intoxication." It is claimed that there was no testimony whatsoever to the effect that either Mr. Christensen or the decedent had a reasonable opportunity to alight at a reasonably safe place, assuming they knew Mr. Malkin was intoxicated. While defendants concede that this portion of the instruction was unnecessary because the defendants have never contended that the plaintiffs failed to utilize an opportunity to leave the vehicle after the trip commenced, it could be said that Mrs. Christensen had no time to alight as the accident occurred just a few minutes after the trip started. The assumption of risk occurred when the Christensens voluntarily commenced the trip at the resort with the knowledge that they had.

Plaintiffs further contend that some of the instructions had bracketed words in them and that it is not known whether the trial court gave the instructions with or without the bracketed portions. At the conclusion of the closing arguments the court stated to counsel: "The instructions are all in writing and will not be ad libbed; do not need to be reported unless counsel wishes." A stipulation was entered into between the counsel for the respective parties that the reporter's transcript would be deemed to have included in it the jury instructions. This was also ordered by the trial court. Thus, some of the instructions which are a part of the record on appeal contain bracketed language which is not appropriate to this particular case. However, it should be the duty of counsel, and not the court, to make the proper deletions and the plaintiffs are bound by the record which is brought to this court. If they had wanted the instructions

126

transcribed by the reporter exactly as given, they had that right and opportunity, which they stipulated away. [11] Error is never presumed but must affirmatively appear from the record, and it must be presumed that the court deleted inappropriate language from the instructions and properly instructed in the verbal charge.

The plaintiffs also contend that it was error to allow Mr. Malkin to testify as to the quantity of liquor that he had been served, citing Code of Civil Procedure section 1845.

While the suggestion of error without a supporting argument or case authority may be overlooked, as set forth in *Thompson* v. *Keckler*, 228 Cal.App.2d 199, 213 [39 Cal.Rptr. 267], it should be noted that Mr. Malkin was experienced in the bar business and was the manager of a bar and certainly should have been qualified as a competent witness with regard to the quantity of liquor that had been served, that is, the amount of liquor that is in a "shot" glass.

Plaintiffs contend that the trial court erred in overruling their objections to a hypothetical question propounded to a Mr. Luckey, a chemist specializing in biochemistry and toxicology of alcohol and its effects upon automobile drivers. The following question was asked of him: "Assume a man aged 31, weighing approximately 220 to 225 pounds; that approximately 7:30 p.m. he has a couple of sips out of a drink of Canadian Club highball; that this was at a residence in Ontario, California; that this gentleman was with a party of three; went to a place at Pedley, California, near the City of Riverside at a place called the Casino Steak House; and upon arrival at approximately 8:00 p.m. at that point he had either one or two Martinis containing approximately one to one and a quarter ounces of gin; that he had approximtely 3½ ounces of a wine known as Medoc wine with a steak dinner which was consumed some time between 8:00 and 9:30, approximately, p.m. of that evening; that this gentleman then returned to Ontario, California.

"In Ontario, California, drove to—his automobile—to a place in the mountain near Ontario known as the Mt. Baldy Canyon area; that at 10:30 p.m. had a Scotch highball consisting of approximately 7/8th of an ounce Scotch whisky in a highball glass with ice and water; and that about twenty minutes thereafter the party left the resort I have just referred to and went to another resort.

"Upon arriving about 11:00 to 11:30, he had one Scotch highball which was called a Scotch whisky with water back,

namely, that the whisky was served in a 7/8th ounce shot glass, poured into the water and ice, served in a glass; that approximately two more such of these drinks were consumed by this man between 11:00 or 11:30 and approximately 1:45; and that at 1:45 a.m. he had a fourth one.

"Now, then, just on those bare facts, by itself, would you have an opinion as to whether or not at 2:00 a.m. this man would have had alcohol in his system of such density or concentration as to impair his ability to drive?"

Plaintiffs' counsel objected to the question on the ground that it was incompetent, irrelevant and immaterial and that there was no proper foundation, and particularly, as to the amount of alcohol consumed.

The precise objection to the question here involved is difficult to ascertain from the plaintiffs' briefs. It appears to run primarily to the fact that the alcoholic content of the various drinks was not incorporated in the question. It is said the question did not set forth the ingredients of the martinis nor the alcoholic content thereof, since the witness was asked to assume that each martini contained approximately one to one and a quarter ounces of gin and the evidence showed that the drinks contained both gin and vermouth. The alcoholic content of the wine was not set forth, nor the alcoholic proof of the Scotch whiskey, nor did the question advise the witness as to the nature of the physical activities of the assumed man involved with regard to the "burn up" of alcohol.

The objections to a hypothetical question must call the attention of the court and counsel to the objectionable portion of the question. If it is contended that essential facts have been omitted from the hypothetical question, such omissions must be called to the attention of the court. (*Dameron* v. *Ansbro,* 39 Cal.App. 289, 296 [178 P. 874].) Thus, the objection of plaintiffs' counsel to the question is not sufficient to meet this rule.

Mr. Luckey testified that assuming the hypothetical state of facts claimed by defendants (that Mr. Malkin had four highballs at the Ice House Canyon Resort), a hypothetical person of Mr. Malkin's weight and age would not have had sufficient alcohol in his system at 2 a.m. to affect his ability to operate an automobile. In other words, if he had three "straight shots" between 1:45 a.m. and 2 a.m., such a hypothetical person would not, in the opinion of the expert, have sufficient alcohol in his blood by 2 a.m. to affect his ability to

operate an automobile because there would not have been sufficient time for absorption.

The reading of the entire testimony discloses that the expert witness made every effort to include the vital factors, and there was no error, prejudicial or otherwise, demonstrated.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 29, 1965.