[Civ. No. 298. Fifth Dist. June 25, 1964.]

WILLIE THOMPSON, Plaintiff and Respondent, v. JEAN-ETTE KECKLER, Defendant, Cross-complainant and Appellant; EDNA F. THOMPSON et al., Cross-defendants and Respondents.

Creede, Dawson & McElrath and J. M. McElrath for Defendant and Appellant.

C. Ray Robinson, John E. Whiting and Mary C. Fisher for Plaintiff and Respondent and Cross-defendants and Respondents.

BROWN (R.M.), J.—Plaintiff Willie Thompson was injured when the car in which she was a passenger and a car driven by defendant-appellant Jeanette Keckler collided at an intersection. The car was owned by plaintiff's daughter Edna F. Thompson and was being driven by another daughter, Dorothy Collins. Plaintiff brought an action for damages for personal injuries against defendant, who cross-complained against plaintiff, Dorothy Collins, and Edna F. Thompson. A jury left all of the parties where it found them, and after judgment was entered on the verdict the plaintiff moved for a new trial "solely on the issue of damages sustained by the plaintiff." While four statutory grounds are set out, only one of which is pertinent—insufficiency of the evidence —the motion was granted on the issue of damages alone. Defendant appeals from the order granting a limited new trial and "conditionally" appeals from that portion of the judgment which denies her a recovery on her cross-complaint.

The accident occurred at an intersection in Merced at about 4 p.m. on a winter afternoon while a light rain or mist was falling and the streets were wet. Mrs. Keckler was driving east on 13th Street, which is a through street, and Dorothy Collins was traveling north on "R" Street, entering the intersection with 13th Street which was protected by a stop sign. As Mrs. Keckler approached the intersection a large motor van tractor and van trailer turned west on 13th Street. The only sharp conflict is whether the van had been traveling north and made a lefthand turn as Mrs. Collins and

Mrs. Thompson testified, or whether it had been traveling south and made a righthand turn as Mrs. Keckler claimed. At any rate, the rear of the van swung over the center line partially into the eastbound lane. When Mrs. Keckler was more than 127 feet west of the intersection she saw the van partially in her lane, swung toward the curb to her right to avoid it, then back on course and into the intersection at a speed of 20-25 miles per hour. The van had blocked her view to the north and she did not see the car in which Willie Thompson was riding until she was about 36 feet from it. She then applied her brakes, but crashed into the right side of the car, damaging both doors, and damaging her car in the sum of approximately $823.

Dorothy Collins testified that she was driving Edna F. Thompson's car south on "R" Street, that she stopped at the stop sign, that she saw the Keckler car a block west, that the van was stopped at the stop sign across the street, that it turned left on 13th Street and when it cleared the intersection she judged the car she had seen should be about halfway up the block and she could safely cross the intersection, that she proceeded into the intersection and was almost across when the impact occurred, that the next time she saw the Keckler car was when it was "right on us."

The injured plaintiff, Mrs. Thompson, testified that she did not know how to drive a car, that on the day of the accident Dorothy Collins picked her up at the home where plaintiff was working, that they drove to a store to shop for groceries, that she did not notice the traffic but did see the van, that she was looking down and when she glanced up the other car was "right on" them and the impact occurred. She testified that she never paid her daughters anything for driving her around, never bought any gasoline, that she sustained a bump on the head, her left ankle was broken, that she underwent surgery and was hospitalized for two weeks, used crutches for three or four months, and at the time of trial still experienced pain and swelling in her ankle. Both parties stipulated as to the reasonableness of her hospital and doctor bills totaling $1,260.40.

A police officer testified that the streets were wet, that there were no skid marks, that defendant's car traveled 28 feet from the point of impact, while Dorothy Collins' car traveled 48 feet after the collision.

With this evidence before it, the jury retired to deliberate, carrying four forms containing numerous possible verdicts.

After an hour they returned and, concerning the verdict forms, stated, " . . . we would like to have what each one results in." The court then read and explained the four forms.

The verdict which was ultimately adopted was as follows:

"We the jury find in favor of Jeanette Keckler and against the defendant Willie Thompson, and find in favor of the cross-defendant Willie Thompson, Edna Faye Thompson, and against the cross-complainant Jeanette Keckler."

After reading this form of possible verdict, which was the first one of the four read, the court explained it to the jury in the following language:

"That means that if you sign this verdict, that neither party gets anything. Not on the cross-complaint and nothing on the complaint."

The other three possible verdicts provided for the following:

(No. 2) "We the jury find in favor of the cross-complainant, Jeanette Keckler, and against the cross-defendant Edna Faye Thompson and assess the cross-defendant in the sum of blank dollars. And we find in favor of the defendant Jeanette Keckler and against the plaintiff."

(No. 3) "We the jury find in favor of Willie Thompson and against Jeanette Keckler and assess damages in the sum of blank dollars."

(No. 4) "We the jury find in favor of the cross-complainant, Jeanette Keckler and against the cross-defendants, and assess cross-defendant damages in the sum of blank dollars.

"But we find in favor of the cross-defendant Willie Thompson and we find in favor of the defendant Jeanette Keckler, and against the plaintiff Willie Thompson.

"We find in favor of the defendant Jeanette Keckler against the plaintiff."

Thereupon, the jury retired and returned with the unanimous verdict first above set forth.

At the hearing on the motion for new trial, the plaintiff's counsel argued that, by finding against defendant on her cross-complaint, the jury had conclusively determined the issue of her liability, leaving only the question of Mrs. Thompson's damages to be retried. The defense counsel argued that the jury could well have found that Mrs. Keckler did everything a prudent person could do, that she had a right to rely on the presumption that southbound traffic on "R" Street would obey the law and remain stopped at the stop sign until traffic on 13th was clear and on this basis the

jury could have found defendant not negligent. Judge Maushart then stated from the bench: "Well, I wouldn't subscribe to that conclusion, Mr. McElrath. I think the evidence in this case, was almost a question of law that both parties were negligent. Take the speed of the Keckler car. Now while the testimony was that it was traveling at a reasonable rate of speed, nobody has ever put the other car at doing more than five or ten miles an hour, yet the Keckler car winds up practically demolished, requiring $800.00 work. I think it would be a natural assumption for the jury to say that she was traveling at an excessive rate of speed at least in excess of what she testified to. And you have the quarrel there, did this lady in the other car stop at the stop sign? Witnesses have testified she did, other witnesses testified she didn't. I think the jury found them both negligent and responsible for the accident. And having found them both negligent, I think the question is res judicata. They had a full hearing on the thing. They were fully instructed. All kinds of verdicts were prepared which you concurred in. I think the negligence of both parties has been established by the verdict of the jury. The passenger in the car being free from negligence would be entitled to a new trial and since the negligence has been established I am going to grant her a new trial on the issue of damages alone."

The rules governing appellate review of an order granting a new trial are compiled in *Yarrow* v. *State of California,* 53 Cal.2d 427 [2 Cal.Rptr. 137, 348 P.2d 687]. ▮ At page 434, the Supreme Court said: "The rules on appeal from an order granting a new trial are well settled. All presumptions favor the order as against the verdict and the order will be affirmed if it may be sustained on any ground, although the reviewing court might have ruled differently in the first instance. [Citations.] ▮ Appellate review is not limited to the ground stated in the lower court's order [citations] with the exception of the ground of insufficiency of the evidence. ▮ If the order does not specify that it is granted on this ground, it must be conclusively presumed on appeal that the order was not based thereon. [Citation.]

▮ "In considering the sufficiency of the evidence on the hearing of a motion for new trial it is the exclusive province of the trial court to judge the credibility of the witnesses, to determine the probative force of testimony and to weigh the evidence, and it may draw reasonable inferences therefrom opposed to those drawn by the trier of fact at the trial.

[Citations.] It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse an order granting a new trial on this ground. [Citations.] Error is not presumed and the burden is upon the plaintiffs herein to affirmatively show its presence in the record [citations] or a manifest and unmistakable abuse of discretion.''

Defendant has contended that the issue of damages is moot, citing volume 36, California Jurisprudence 2d, sections 159, 160, pages 367-370, and *J. Levin Co.* v. *Sherwood & Sherwood*, 55 Cal.App. 308 [203 P. 404]. She also contends that it is too late to take any action now inasmuch as plaintiff did not move for a new trial on the issue of liability and did not appeal from the judgment, citing *San Diego Land etc. Co.* v. *Neale*, 78 Cal. 63 [20 P. 372, 3 L.R.A. 83], and *Estate of Everts*, 163 Cal. 449 [125 P. 1058].

While the two cases last mentioned have never been expressly overruled, the case law, particularly as set forth in *Hamasaki* v. *Flotho*, 39 Cal.2d 602 [248 P.2d 910], undercuts the proposition that when a new trial is granted on the issue of damages alone and no appeal is taken from the judgment, the issue of negligence is forever fixed as the jury found it. In *Hamasaki*, a personal injury case, where a motion for new trial was made and granted on the issue of damages alone, it was held that the reviewing court could nevertheless review the entire judgment and direct the trial court to grant a new trial on all issues.

Defendant also argues that her right to a jury trial is guaranteed by article I, section 7, of the California Constitution, that the question of her negligence under the circumstances was a jury question, that the jury decided it in her favor by denying plaintiff relief on the complaint, and it is beyond the power of the trial court to reverse the finding of the jury and award some sort of verdict to plaintiff despite the defendant's constitutionally guaranteed right to have the question of her liability determined by a jury; and thus, if the right to grant a new trial vests in the court the right to change a jury's mind, the constitutional protection of the right to trial by jury is a complete nullity and that therefore, the order granting a limited trial is void.

In *Dorsey* v. *Barba*, 38 Cal.2d 350, involving the question of the trial court's having no power of additur in a case where damages are unliquidated and contested, depriving the plaintiff of her right to have that issue determined by a jury,

the Supreme Court said at page 358 [240 P.2d 604]: "However, it is not the mere form of a jury trial to which one is entitled under the Constitution, but the fundamental right to have a jury determination of a question of fact. It is, of course, clear that there has been no denial of such right if a verdict is set aside and motion for new trial granted. [Citations.] But it does not follow that, in lieu of ordering a new trial, the court may itself assess damages on conflicting or uncertain evidence and modify the judgment with the assent of only one party. Neither can such procedure be justified as a proper exercise of the court's authority to prescribe terms in granting or denying motions for new trials. A court may not impose conditions which impair the right of either party to a reassessment of damages by the jury where the first verdict was inadequate, and the defendant's waiver of his right to jury trial by consenting to modification of the judgment cannot be treated as binding on the plaintiff."

In *Ingraham* v. *Weidler*, 139 Cal. 588, 589-590 [73 P. 415], the Supreme Court, in a tersely worded paragraph, said: "The courts in this country, and in England since long before the time of Blackstone, had always exercised the power of granting a new trial after verdict, and for the causes, among others, of insufficiency of evidence, or that the damages were either inadequate or excessive [citation]; and this power was a recognized part of the 'right of trial by jury,' as that phrase is used in the constitution."

In *Adams* v. *Hildebrand*, 51 Cal.App.2d 117, at page 119 [124 P.2d 80], the following appears: "Neither is there any merit in defendant's proposition that, if the order granting the motion for a new trial stands, he is being deprived of his constitutional right to a trial by jury."

Defendant contends that the trial court abused its discretion because the only real conflict in the testimony is an irrelevant dispute as to whether the truck and van turned from the north or south. It is claimed that both drivers conceded that their vision was obstructed by the presence of the truck, but defendant was on a through street and the trial court should have found as a matter of law that the defendant was not negligent. She relies on *Goncalves* v. *Los Banos Mining Co.*, 58 Cal.2d 916, where the court stated at pages 918-919 [26 Cal.Rptr. 769, 376 P.2d 833]: " . . . the only question presented is whether the evidence establishes as a matter of law that Mrs. Sanchez was negligent and that her negligence was a proximate cause of the accident.

"Mrs. Sanchez testified that she had driven on Ortegalita numerous times, that as she approached the intersection she was looking straight ahead, and that she did not concern herself with the possible approaching traffic on Pioneer because she knew there was a stop sign. She was entitled to assume that cars on Pioneer approaching the intersection would obey the stop sign, and she had a right to rely on that assumption until she knew or should have known that Menezes would disregard the sign."

Plaintiff states, however, that *Goncalves* is distinguished from the present case in that there, the court said that the driver was "entitled to assume" that another driver would obey a stop sign and that she could "rely on that assumption until she knew or should have known" that the other driver would disregard the sign. She argues that in this case Dorothy Collins did stop at the stop sign and was almost across the intersection when her car was struck and that Mrs. Keckler, who knew that her vision was obscured, nevertheless rushed into the intersection and that thus the *Goncalves* decision is limited specifically to cases where the other driver did not know or should not have known that the stop sign would be disregarded.

It is prejudicial error to limit a new trial to the issue of damages alone where the issue of negligence is close, even in those cases where judgment was rendered in favor of a plaintiff but for an inadequate amount of damages. See *Leipert* v. *Honold*, 39 Cal.2d 462 at page 467 [247 P.2d 324, 29 A.L.R. 2d 1185]; *Hansen* v. *Bledsoe*, 130 Cal.App.2d 70 [278 P.2d 514]; *Murphy* v. *Wilson*, 141 Cal.App.2d 538 [297 P.2d 22]; *Provost* v. *Worrall*, 142 Cal.App.2d 367 [298 P.2d 726].

Plaintiff relies on *Uhl* v. *Baldwin*, 145 Cal.App.2d 547 [302 P.2d 841], where the plaintiff was a passenger in a car which was involved in an intersection accident. The court, at page 554, stated: "Under no possible construction of the evidence can it be held that plaintiff was guilty of independent negligence." And, quoting from *Kelley* v. *Hodge Transp. System*, 197 Cal. 598, 604 [242 P. 76], continued: " 'She violated no duty [of care owed] to herself or to others and it is not shown that she neglected to do anything that a reasonable person in her situation should have done or that she did anything that could be regarded as negligence on her part under the circumstances of the collision.' "

No negligence on the part of Mrs. Collins can be imputed to Mrs. Thompson. There is no evidence of joint venture or

agency. Mrs. Thompson had no right to control her daughter's driving, and the family relationship affords no basis for imputed negligence. There is no evidence at all which would support a finding of imputed negligence.

While in the *Uhl* case, *supra,* where a new trial on the issue of damages was affirmed, the court in making an award of damages in favor of Mrs. Uhl obviously decided the primary issue of Baldwin's liability against her. Mrs. Uhl was not a cross-defendant in Baldwin's cross-suit. In our case there was no award at all to Mrs. Thompson; the jury found against her, and she was one of the cross-defendants in Mrs. Keckler's suit.

There are numerous cases where new trials have been granted on the issue of damages alone, but in each case the plaintiff was awarded some damages, no matter how inadequate.

In *Hamasaki* v. *Flotho, supra,* 39 Cal.2d 602, 604-605, the court stated: ''Although the granting of a new trial limited to the issue of damages rests primarily in the discretion of the trial court, it is an abuse of discretion to grant such a new trial if the question of liability is close, if the damages awarded are grossly inadequate, and if there are other circumstances that indicate that the verdict was the result of prejudice or an improper compromise.''

Thus, we have come to the conclusion that the matter is close and that it cannot be said that the liability issue has been determined completely by the jury. The order granting a new trial on the issue of damages should be reversed and the case remanded to the trial court with directions to order a new trial on all issues.

### *Conditional Appeal From Judgment Denying Recovery on Cross-Complaint*

Rule 1(a), California Rules of Court, provides: ''An appeal from a judgment of a superior court or from a particular part thereof is taken by filing with the clerk of that court a notice of appeal therefrom. The notice shall be signed by the appellant or by his attorney and shall be sufficient if it states in substance that the appellant appeals from a specified judgment or a particular part thereof. A notice of appeal shall be liberally construed in favor of its sufficiency.''

The rule of liberality has been applied by the courts to save appeals where defects in the notice are of such a nature that the judgment or order appealed from is identifiable and the respondent is not misled or prejudiced by such defects.

Thus, where the judgment or order is misdescribed (*Luz* v. *Lopes,* 55 Cal.2d 54 [10 Cal.Rptr. 161, 358 P.2d 289]; *Adams* v. *Talbott,* 20 Cal.2d 415 [126 P.2d 347]; *Hoogbruin* v. *Atchison, T. & S.F. Ry. Co.,* 213 Cal. 582 [2 P.2d 992]; *Harrelson* v. *Miller & Lux, Inc.,* 182 Cal. 408 [188 P. 800]; *Helfer* v. *Hubert,* 208 Cal.App.2d 22 [24 Cal.Rptr. 900]; *Fairchild* v. *Bank of America,* 165 Cal.App.2d 477 [332 P.2d 101]), or where the date of the judgment is erroneously given (*Collins* v. *City & County of San Francisco,* 112 Cal. App.2d 719 [247 P.2d 362]), the liberal view may be taken.

Some of the earlier cases were strict insofar as the language of appeal contained in the notice was concerned. The words "desires and intends to appeal" were held insufficient to invoke jurisdiction in *Oxford* v. *Imperial Southside Water Co.,* 34 Cal.App. 1 [166 P. 1023], and in *Wall* v. *Hunter,* 186 Cal. 473 [199 P. 775]. In *Estate of Roberson,* 114 Cal.App.2d 267 [250 P.2d 179], it was held that the notice must substantially state a *present* intention, and show that the party is, by means of that notice, *presently* appealing from some specific thing. In discussing the liberal construction aspect of the rule, the court said at page 270: "An unexpressed intention or desire to appeal from the judgment should not be read into that notice under the guise of a liberal construction."

However, other cases, and particularly later ones, have been liberal indeed in construing the notice so the appeal may be heard on the merits. Notices which contained the phrase "desires or intends to appeal" were held good in *Lierly* v. *McEwen,* 81 Cal.App. 676 [254 P. 587], and in *In re Forthmann,* 118 Cal.App. 332 [5 P.2d 472]. And the phrase "will move for an appeal" was held sufficient in *People* v. *Burroughs,* 200 Cal.App.2d 629 [19 Cal.Rptr. 344]. In *People* v. *Hagan,* 203 Cal.App.2d 34 [21 Cal.Rptr. 116], the notice failed to specify the judgment from which the defendant was appealing or even that he was, in fact, appealing, yet the court decided the appeal on the merits on the reasoning that the notice as a whole indicated an intent of the defendant to appeal. It is notable that these latter cases were criminal appeals, but if the question is one of jurisdiction, there should be no distinction between criminal and civil appeals.

In *Luz* v. *Lopes, supra,* 55 Cal.2d 54, Justice Peters determined that a notice of appeal from "all orders and rulings" adverse to the appellants included an appeal from the judg-

ment. ■ He sets down the following test: "Under this rule [Cal. Rules of Court, rule 1(a)], and prior to its adoption, it is and has been the law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." (P. 59.)

■ Applying that test to the present case, the following is notable: (1) The judgment denying recovery on the cross-complaint is an appealable one, and the appellant could have unconditionally appealed therefrom, then argued that portion of the appeal in brief on a conditional basis; (2) it is clear that the appellant is trying to appeal from the adverse judgment on her cross-complaint; (3) the respondent is neither misled nor prejudiced—she doesn't even question propriety of this portion of the appeal; she simply argues it; and (4) there is no reason why the words of condition in the notice should not be treated as surplusage.

### Appeal from the Judgment

Turning to this portion of the appeal on the merits, an entirely different set of rules comes into play, since this is a direct appeal from the judgment. On the motion for new trial, the trial court had power to reweigh and reassess the evidence, determine credibility, resolve conflicts, draw different inferences than those drawn by the jurors, and, in effect, overturn the jury's verdict. This court is vested with no such broad powers on a direct appeal from a judgment. The familiar rules, as set out in *Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557], are: "As has so frequently been said, it is the general rule that on appeal an appellate court (1) will view the evidence in the light most favorable to the respondent; (2) will not weigh the evidence; (3) will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact; and (4) will not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof. [Citations.] It is not the province of the reviewing court to analyze conflicts in the evidence. [Citation.] Rather, when a finding of fact is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence contradicted or uncontradicted, which will uphold the disputed finding. [Citation.]"

Defendant first argues insufficiency of the evidence to support the judgment against her on her cross-complaint. She relies entirely on *Goncalves* v. *Los Banos Mining Co., supra,* 58 Cal.2d 916, and argues that, if the defendant Sanchez in that case was entitled to rely on the presumption that vehicles approaching the through street on which he was traveling would stop at the stop sign and yield the right of way, then defendant in this case certainly had that right. It is pointed out that the intersection in *Goncalves* was in a flat farmland area where vehicles traveling on the intersecting street could be seen for a long distance, whereas here Mrs. Keckler's view of the intersecting street to the north was obscured by the moving van. This, it is said, proves that she was not aware and had no way of becoming aware of the fact that Dorothy Collins would come shooting out from behind the truck.

Plaintiff answers by pointing out that the evidence shows defendant was 127 feet west of the intersection when she swerved to avoid the rear of the van; that her vision was then unobstructed but she did not see the Collins car until she was about two car-lengths, or 36 feet from it; and even assuming that the van blocked her view, she was negligent in rushing on into the intersection at a fast rate of speed.

Defendant next attacks the charge to the jury. ▆▆ The rules are set out in *Ray* v. *Jackson,* 219 Cal.App.2d 445, where this court said at page 455 [33 Cal.Rptr. 339]: "While it is true that each litigant is entitled to have instructions submitted to the jury on all of his theories of the case which find support in the pleadings and the evidence; and it is incumbent upon the trial court to instruct on all material issues involved [citations], it is equally true that the court is not required to give every instruction offered by a litigant nor to instruct in the language selected by him [citation]. ▆▆ Nor is a party 'entitled to have the substance of instructions given by the court repeated in different language' [citation]."

Defendant offered and the court refused instructions on "sudden peril." The sudden peril is said to be the presence of the moving van with which it is claimed defendant was suddenly confronted. That semi-tractor and van were repeatedly said to be "large," "big," and "one of the big ones" in the testimony. Whether it turned west from a northbound or southbound line of travel, it started from a complete stop and had completed its turn and traveled a

sufficient distance west on 13th so that its *rear end* was some 127 feet westerly of the intersection when defendant, traveling east and facing it was "suddenly confronted" with it. As plaintiff points out, defendant testified she saw the van "from a long ways back"; that she pulled over to the right and applied her brakes. From a distance she saw the truck, saw that its rear end was over the line, realized she must move to the right which she could and did easily do. Any danger presented by the van was passed long before she entered the intersection. ▆ It is improper to give an instruction on sudden peril unless the litigant is suddenly and unexpectedly faced with a danger and to avoid that danger, took action which resulted in injury. (*Kuist* v. *Curran,* 116 Cal.App.2d 404, 410 [253 P.2d 281]; *Rhodes* v. *Firestone Tire etc. Co.,* 51 Cal.App. 569 [197 P. 392]; and *Fraser* v. *Stellinger,* 52 Cal.App.2d 564, 567 [126 P.2d 653].)

Defendant makes an amorphous attack on the failure of the trial judge to give certain other instructions. She says, "There seems to be no real reason why the trial court should not have given appellant's proffered instruction on 'negligent inattentiveness' under the facts of this case," or instruction upon the subject of owner's liability for the operator's negligence or the legal effect of respondent Collins' negligence in violating Vehicle Code section 21802. No argument is made as to why the court should have given them; no evidence is pointed to as supporting them; no case law is cited. ▆ When a point is merely suggested by appellant's counsel, with no supporting argument or authority, it will be deemed to be without foundation and requires no discussion. (*In re Steiner,* 134 Cal.App.2d 391, 399 [285 P.2d 972].) As to the instruction on violation of section 21802 of the Vehicle Code, the court read and explained the pertinent portions of the statute to the jury in instructions which were given.

▆ Defendant next charges that a "theoretical duty" of the defendant to keep her car under such control that she could stop if somebody came suddenly from behind the stop sign into her path was prejudicially overemphasized by the trial court in its instructions. It is claimed that this prejudicial overemphasis was compounded by the trial court's refusal to instruct on "sudden peril" and that the duty of ordinary care does not require that a driver be exceptionally cautious or especially skillful as covered in appellant's refused instruction.

The supplemental clerk's transcript shows that the court

instructed the jury as to the definition of ordinary care; that in the exercise of ordinary care the amount of caution required will vary in accordance with the nature of the act and the surrounding circumstances; and that every person using a public highway is under a duty to exercise ordinary care at all times to avoid a collision. The judge also instructed on the duty of the driver of any vehicle to exercise ordinary care, to be vigilant, keeping a lookout for traffic to be reasonably anticipated; to keep a vehicle under control so he can stop to avoid a collision, et cetera. The court instructed that it is the duty of the driver of an automobile to use reasonable care to drive at such a rate of speed and in such a manner as will enable him to retain control and to use reasonable care to stop or check its speed in the event it is necessary to do so. The judge struck from this instruction the following: "If you find from the evidence that the defendant, Jeanette Keckler, violated this duty, then you must find her guilty of negligence." By so doing, he made it applicable to the drivers of both vehicles. Apparently these are the instructions which defendant says "overemphasize a nonexistent duty." These are the usual instructions. While there is some repetitious language therein, it falls far short of the overemphasis condemned in *Taha* v. *Finegold*, 81 Cal. App.2d 536 [184 P.2d 533], and does not result in reversible error.

Defendant next contends: "While appellant's crosscomplaint tendered to the jury the issue of her right to recover for damages for her own personal injuries, all of the trial court's instructions on this subject directed the jury, in the event liability was found, to assess damages in favor of plaintiff, Willie Thompson. Appellant had offered an alternate set of instructions on the subject." No useful purpose would be served by a discussion of instructions given and refused relating to damages which may have been sustained by defendant. The jury having determined against her on the issue of liability, the question of the extent of her damages was never reached and any error in giving, or refusing to give, instructions was not prejudicial.

Defendant next claims errors in law in that the court took from the jury the issues of agency and contributory negligence imputable to the plaintiff herself and refused defendant's instructions on these theories. There is no evidence in support of either theory. Contributory negligence of a passenger in a vehicle was defined by Justice

Bray in *Bencich* v. *Market St. Ry. Co.*, 20 Cal.App.2d 518, at page 528 [67 P.2d 398], as follows: "This is exemplified by a guest in a car watching the driver take him into a known peril and doing nothing about it in the way of warning or objection, or where the passenger knows that the driver is doing something negligent but sits idly by making no effort to persuade the driver to cease the negligent act. There, it is not a case of the driver's negligence being imputed to the other, but is a case of the other being himself negligent, in which case, of course, he cannot recover. Any passenger in an automobile is bound to use ordinary care for his own safety and if he fails to do so he is guilty of negligence himself."

In this case there was no evidence that plaintiff knew her driver was taking her into a known peril and did nothing. She was looking down, and was not aware of the defendant's car until immediately before the collision. There is no evidence that she failed to use ordinary care for her own safety, and therefore no evidence of contributory fault. She did nothing which could be construed to be contributory negligence.

As to agency, in *Flores* v. *Brown,* 39 Cal.2d 622, 630 [248 P.2d 922], the court said: "Since the decision in the *Keena* case, however [*Keena* v. *United Railroads of S. F.,* 57 Cal.App. 124 (207 P. 35)], where the agency doctrine was enunciated, it has been settled that the family relationship standing alone is not sufficient to convert family activities into joint enterprises for purposes of imputing negligence."

In *Edwards* v. *Freeman,* 34 Cal.2d 589 [212 P.2d 883], a son, at his mother's request, gave her a ride in his car to town for the purpose of getting her eyes tested. An accident occurred and it was contended the son's negligence was imputed to the mother on the theory that he was her agent. The trial court instructed on agency and the defense judgment was reversed. The argument was made on the appeal and the Supreme Court had this to say at pages 591-592: "To permit a finding of agency upon this evidence would be, in effect, to hold that one who performs a mere favor for another, without being subject to any legal duty of service and without assenting to any right of control, can be an agent. This is not the law. . . . In the absence of the essential characteristic of the right of control, there is no true agency and, therefore, no 'imputation' of the driver's negligence to the passenger. [Citations.] To paraphrase the pertinent language of *Stoddard* v. *Fiske* (1917) 35 Cal.App. 607, 609 [170 P. 663], there was no evidence of any employment of the son by the

mother; it is clear that the son undertook what he did in order to be of assistance to his mother and as an act of friendship or filial regard; 'The doctrine of *respondeat superior* sought here to be invoked . . . must necessarily be based upon a relationship between two parties by which one has the legal right to direct the activities of the other and the latter the legal duty to submit to such direction.' '' And said further, at page 594: "Upon the record here, where the evidence shows no more than a friendly or filial service, gratuitously rendered, it was error to submit the issue of imputed negligence to the jury and the error was clearly prejudicial because the inadequate and confusing instruction on the subject of agency at the least *permitted* the jury to find such a relation (if it be not understood as directly suggesting such a conclusion) from the mere 'instance and request' of plaintiff.''

Both Dorothy Collins and Edna F. Thompson drove their mother about as a "friendly or filial service, gratuitously rendered." Mrs. Thompson had no legal right to direct or control Dorothy Collins. Under the cases above quoted, it would have been error to instruct on agency.

Appellant's remaining arguments are devoid of merit and do not require discussion.

The order granting a new trial on the issue of damages only is reversed, and the cause is remanded to the trial court with directions to grant the plaintiff a new trial on all issues. The judgment on the cross-complaint is affirmed.

Conley, P. J., and Stone, J., concurred.