[Civ. No. 891.   Fifth Dist.   Aug. 6, 1968.]

ANNA ROSE BUSICK, Plaintiff and Appellant, v. RALPH E. STOETZL et al., Defendants and Respondents.

L. Kenneth Say and William A. Schleich for Plaintiff and Appellant.

Sherwood Green and Denslow Green for Defendants and Respondents.

STONE, J.—This is an appeal from an interlocutory judgment in a partnership dissolution action. Prior to July 19, 1950, Valley Feed & Fuel Company did business as a corporation. It then changed to a partnership, former shareholders taking an interest in the ratio to their ownership of corporate shares. The partnership business that emerged was composed of three husbands and wives: plaintiff, Anna Busick, then Anna Betters, and Walter, her deceased husband, Ralph E. and Rolline Stoetzl, and William and Cora Frey. The written partnership agreement vested management of the business in the three husbands, each of whom received a monthly salary, set from time to time by mutual consent of the partners. Inactive partners drew no salaries.

On July 1, 1957, the Stoetzls and the Betters purchased the interest of the Freys, each purchasing in proportion to his then interest in the partnership. Walter Betters and Ralph Stoetzl continued to manage the business and draw salaries. On November 21, 1959, Walter Betters died and Ralph Stoetzl assumed full management of the partnership affairs. Later, Ralph E. Stoetzl, Jr., joined the partnership by purchasing part of his parents' interest. The trial court found the partnership interests to be: Anna Rose Betters Busick, 33 percent; Ralph E. Stoetzl, Sr., 26 percent; Rolline Stoetzl, 26 percent; and Ralph E. Stoetzl, Jr., 15 percent. Although no new written partnership agreement was executed after Mr. Betters' death, the trial court found that with each change in partner personnel the existing partnership terminated and a new one was formed, in part by express oral agreement and in part by implied agreement.

Perhaps the most critical finding insofar as this appeal is concerned is that under each agreement Ralph Stoetzl, the only active managing partner, was entitled to receive a salary. Stoetzl received yearly salaries, paid in monthly installments, as follows: $11,004 for the years 1960, 1961 and 1962, $14,117 for the year 1963, $14,400 for the years 1964, 1965 and January through March 1966, $20,000.04 April through December 1966 and for the year 1967. However, the court found that plaintiff agreed to the yearly salary of $11,004 only, that she did not agree to the increased amounts commencing with the year 1963. The court ordered Stoetzl to reimburse the partnership for all amounts received as salary over and above the

sum of $11,004 per year, although it found that the increased amounts were justified, that Stoetzl properly managed the business, that he operated it at a profit each year, and that in each year the reasonable value of his services exceeded the amount he received in salary. Ralph Stoetzl has not appealed from the order to reimburse salary received in excess of $11,004 per year.

Plaintiff appeals from the judgment ratifying the annual salary of $11,004, contending that Stoetzl is entitled to no salary at all for his management of the business, upon the ground that she did not agree that the partnership should pay him a salary after the death of her husband terminated the original partnership agreement. She relies primarily upon Corporations Code section 15018, which provides:

"The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

". . . . . . . . .

"(e) All partners have equal rights in the management and conduct of the partnership business.

"(f) No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs."

Plaintiff argues the code section must be narrowly and literally applied and that absent a definite, express agreement a managing partner cannot be paid a salary. This contention is not new, nor is it the law.

The courts have not hesitated to find an implied agreement within the rationale of section 15018 when fair play impels such a result. Not infrequently the rationalization has been a parallel between the efforts of a partner who devotes his time to the partnership business, keeping it operating successfully, on the one hand, and use of the capital investment on the other. Each is rewarded separately, as each constitutes a separate, distinct and necessary contribution to the partnership. Over a hundred years ago the Supreme Court held, in *Griggs* v. *Clark*, 23 Cal. 427, 430-431: "While all the parties are living, each is under obligation to devote his time and services to the partnership business, and there is therefore good reason for holding that neither should receive a compensation for such services. But when, in consequence of the death of one partner, this equality no longer exists, it is but equitable that the surviving partner should be compensated

for such services as he may have rendered in the business after the death of the deceased partner, to be deducted out of the profits realized by the continuance of the business; and the overplus of such profits, after deducting such compensation, to be divided between the partners.''

Here, the business was operated profitably every year and each partner received his share of the profits. The capital investment also showed a considerable increase in value. Under the doctrine of *Griggs* v. *Clark, supra,* Stoetzl, who made this possible by devoting his time to the successful management of the business, was entitled to receive a reasonable salary.

Although *Griggs* was decided long before the enactment of Corporations Code section 15018, the Supreme Court followed the same reasoning in *Vangel* v. *Vangel,* 45 Cal.2d 804 [291 P.2d 25, 55 A.L.R.2d 1385], decided after the enactment of section 15018. The Supreme Court said, at pages 808-809: ''Section 15042 of the Corporations Code fixes the right of one retired from a partnership for cause, or the personal representative of a deceased partner, to recover compensation for the use of his assets in the continuing business pending an accounting. In such case, he is entitled to 'the profits attributable to the use of his right in the property.' As a practical matter, his share of the profits usually is computed on the basis of the ratio that his share of the partnership assets bears to the whole of them. [Citations.] However, that division may not be equitable when the contribution to profits from capital is relatively minor in comparison to the contribution from the skills or services of one conducting the business. In such a case, the managing partner may be entitled to a greater share of the profits.''

In finding an implied agreement to pay a salary to a partner who has devoted his time and energy to the management of a partnership business, the courts lean heavily upon the principles of estoppel. For example, in *Vangel* a partner expelled from the partnership for cause and by judicial decree, continued to participate in the business in substantially the same manner as before the action for dissolution. As there was no protest by the other partners, the court held they acquiesced fully in his participation in management. Consequently, said the court, the partner who was active in the management of the partnership business was, absent objection by the other partners, entitled to be paid for his services.

A parallel to the case before us is found in *Heck* v. *Heck,* 63

Cal.App.2d 470 [147 P.2d 110]. The court was called upon to determine whether money withdrawn from a partnership business which was the separate property of the husband, was withdrawal of capital or was salary. An implied contract to pay a salary was found from the following facts: the other partner did not participate in the management and control of the business and did not draw a comparable amount; the bookkeeping entries of the partnership reflected the payment of salary; the other partner did not object, although he had knowledge of the salary payments and of the bookkeeping procedure. The court said, at page 474: ''His failure to object to the withdrawal may be construed into his consent to it. Failure to object to the act of an agent or manager, after full knowledge of it, may be a ratification of such and may be considered a circumstance pointing to prior authorization of it. Under these circumstances we may not disturb the conclusion of the trial judge that the withdrawal of the $65,000 was salary paid plaintiff by the partnership.''

In *Neilsen* v. *Holmes*, 82 Cal.App.2d 315 [186 P.2d 197], the nonparticipating partner was furnished an audit showing salary paid to the participating or managing partner, and made no objection. The court construed this as approval of the amounts paid, and precluded the passive partner from contesting the matter of salaries.

In light of the foregoing cases, we turn to the facts before us. Plaintiff was never, at any time, an active partner. She knew that her husband and Stoetzl managed the partnership and both drew salaries. After her husband died, she agreed that Stoetzl should carry on the full management of the affairs of the partnership. Plaintiff testified that she wanted to take her husband's place but when Stoetzl demurred, she acquiesced. Under Stoetzl's management the business flourished. From the date of her husband's death, through the year 1965, plaintiff withdrew $87,122.39 from the partnership in cash, and the value of her equity in the assets increased $68,553.16. Plaintiff received copies of profit and loss statements and copies of partnership income tax returns every year from the time of her husband's death up to the time this action was commenced, and she voiced no objection to Stoetzl's salary reflected in these documents. The books and records of the partnership were open to her for inspection at all times.

According to plaintiff's testimony, she met with Stoetzl shortly after her husband's death. They discussed a salary increase which he told her he intended to make. She made no

objection at the time, and later telephoned the bookkeeper to find out whether he had increased his salary, and was told that he had. Subsequently plaintiff said to Stoetzl, "Well, you got your raise," without making any objection.

The language of *Dugan* v. *Forster*, 104 Cal.App. 117, at page 120 [285 P. 384], appears to be applicable; there the court said: "As a general rule a partner is not entitled to any compensation for services rendered by him to the partnership [citation]. It has been frequently decided, however, that the partners may agree that a partner shall receive compensation, or such an agreement may be implied, and the existence or nonexistence of such a contract is a question for the court to determine from the facts and circumstances of the case, and its inferences of fact which support its conclusions will not be disturbed on appeal, though it might with equal propriety have found the other way [citation]."

There remains plaintiff's argument that the findings as to salary are contradictory, or at least there is an incongruity. The court found:

"28. That all of the partners, with the exception of plaintiff, Anna Rose Busick, agreed to the amounts of salary that were received by the defendant, Ralph E. Stoetzl.

"29. That plaintiff, Anna Rose Busick, agreed to salaries received by defendant, Ralph E. Stoetzl, each year until 1963. That commencing in the year 1963, plaintiff, Anna Rose Busick, did not agreed to an increase in salary in excess of the amount of $11,004.00 per year."

Findings must be viewed in the light of the evidence; when we look at the record the alleged inconsistency disappears and the distinction between the approved salary of $11,004 and the salary increases becomes apparent. In a conversation between plaintiff and Stoetzl in a restaurant in the City of Madera shortly after the death of plaintiff's husband in 1959, she impliedly agreed that Stoetzl was to continue to manage the business and that he should be paid a salary. In 1963 plaintiff and her attorney met with Stoetzl and his attorney to discuss the partnership business. One of the items discussed was an increase in Stoetzl's pay. Plaintiff testified as follows:

"Q. All right. Now what was said about Mr. Stoetzl's salary at that time by you or what was said by him?

"A. I didn't say anything. Attorney Lindsey told me not to say anything, 'Don't you say a word in there,' so I didn't say a word.

"Q. What did Mr. Stoetzl say?

"A. He didn't say anything about his wages, but he said that, 'This man is worth that.'

"Q. By he—

"THE COURT: By he, I think you are indicating the senior Mr. Green.

"A. Sherwood Green.

"Mr. Say: Q. All right. What did Mr. Green say?

"A. He said, 'This is a valuable man. He should get twelve thousand—twelve hundred a month.'

"Q. And what did you say, if anything?

"A. I didn't say anything. I was mad, but I wasn't supposed to say anything.

"Q. And Mr. Lindsey told you not to say anything; is that correct?

"A. He said not to say a word."

However, in a letter written June 24, 1963, Mr. Lindsey said, in relation to the salary being paid Stoetzl: "The mere fact that he has seen fit to increase his salary is not to be construed as a consent on the part of Mrs. Betters for such increase, or increases."

Three years later, in April 1966, plaintiff and her attorney again met with Stoetzl and his attorney, and salary was again discussed. Mr. Stoetzl testified that at this meeting plaintiff said nothing about salaries, and that plaintiff's attorney, Mr. Lindsey, did not object when Stoetzl said he was entitled to at least $20,000 a year; as Stoetzl recalled, Mr. Lindsey said it was not unreasonable.

We conclude that the evidence is ample to support the separate findings that (a) Stoetzl was entitled, by implied agreement, to the original salary of $11,004 per year, and (b) plaintiff did not agree to any increase above that amount.

In the first paragraph of her opening brief, plaintiff made the statement:

"It is further contended that the profits resulting from the operation of the partnership should be divided equally between the plaintiff and cross-defendant and the remaining partners. . . ."

There is no further reference to the point in the brief, no argument, no reference to the record, no citation of authority, nor was the point followed up at oral argument. Therefore we consider the point abandoned. (See *Thompson* v. *Keckler,* 228 Cal.App.2d 199, 213 [39 Cal.Rptr. 267].)

The judgment is affirmed.

Conley, P. J., and Gargano, J., concurred.