[No. B024613. Second Dist., Div. Seven. Aug. 17, 1989.]

PENELOPE PODUS BROFFMAN, Individually and as Trustee, etc., Plaintiff and Appellant, v.
SIDNEY NEWMAN et al., Defendants and Respondents.

COUNSEL

Sanger, Grayson, Givner & Booke, Robert A. Levinson, Greines, Martin, Stein & Richland, Irving H. Greines, Alan G. Martin and Pamela E. Dunn for Plaintiff and Appellant.

Ball, Hunt, Hart, Brown & Baerwitz and Harold Rhoden for Defendants and Respondents.

OPINION

NEWMAN, J.*— Plaintiff, a limited partner of a partnership, appeals from a judgment in favor of defendant general partner on her claim that he was not entitled to special compensation for his services in managing the medical office building which is the business of the partnership. For the reasons discussed below, we reverse.

## FACTUAL AND PROCEDURAL HISTORY

The Wilshire Center Building limited partnership, formed in 1976, owns a medical office building. After the first year, the partnership consisted of Lewis Podus, a limited partner who owned a 50 percent interest in the partnership, his brother Morris Podus, a general partner who owned a 33⅓ percent interest in the partnership, and Sidney Newman, a general partner who owned the remaining 16⅔ percent interest in the partnership.

---

* Assigned by the Chairperson of the Judicial Council.

Although the partnership employed a full-time on-site manager, Lewis Podus, until his death in April 1984, and Sidney Newman performed many of the functions of property management. Lewis Podus spent full time on the business of the partnership and Newman about two days a week. Morris Podus devoted no time to management of the building. Neither Lewis Podus nor Sidney Newman received special compensation for their services to the partnership.[1]    The partnership agreement in paragraph 8.2 specified that the general partners would receive no compensation for services the agreement required of the general partners in paragraph 8.1. The general partners were authorized to employ a property management firm the cost of which was to be a partnership expense. The agreement could be amended only with the consent of partners representing 75 percent interest in profits.

Immediately after Lewis Podus died, Newman offered to manage the building and requested special compensation. He and Morris Podus discussed the matter between themselves and separately advised plaintiff Penny Broffman, Lewis Podus's daughter and trustee of the trust to which Lewis Podus had transferred his interest in the partnership prior to his death, of Newman's proposal. Broffman did not object. Newman and Morris Podus entered into a one-year contract which provided that Newman would receive a fee equal to 5 percent of the gross rental income from the building, with a limit of $75,000 per year. After the first year, Newman asked that the limit be removed. Morris Podus agreed; in May 1985, Newman and Morris Podus entered into a second one-year contract for Newman to manage the building. Before that, in April 1985, Penny Broffman (hereafter Broffman) objected to Newman receiving special compensation and demanded he refund his compensation for the previous year. The following year, Newman earned $102,000.

Broffman sued Newman for breach of contract, breach of fiduciary duties, and declaratory relief. She sought general and punitive damages. Newman defended on the ground that the partners did agree to his special compensation; and that the partnership benefited because the fee he charged was fair. The jury found for the defendants on the legal causes of action and the trial court found in their favor on the declaratory relief cause of action.

## DISCUSSION

Before turning to the substance of the issues presented by this case, we must first dispense with certain contentions by Newman pertaining to

---

[1] During a short period of time, the partners formed a corporation to operate the building. They took a "management" or "maintenance" fee, which was equal to their proportionate share of the profits earned by the business. This was done for tax purposes. No additional compensation was paid to Lewis Podus and Newman during this period.

Broffman's capacity and standing to sue. We fail to understand how Newman can complain on appeal, as a respondent, about these issues when he either raised them in the trial court and lost, or did not raise them at all. Newman does not cross-appeal either on the capacity and standing issues he raises in his brief, or on the contention that Broffman may not proceed on her claims in an action at law for damages and for declaratory relief. Thus they are not properly before the court. In any event, it is sufficient to say that both in his answer and in his testimony, Newman conceded Broffman's status as a limited partner. (Code Civ. Proc., § 430.80, subd. (a); Code Civ. Proc., § 431.20, subd. (a); 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 972, p. 403.) Moreover, if it is Newman's contention that Broffman may not state a cause of action against Newman other than in an action for accounting and dissolution of the partnership, why was not this issue pursued on cross-appeal even if decided adversely to him in the trial court?

Substantively, it appears that at least one of the exceptions applies to the general rule that claims between partners and the partnership may only be resolved in an action for dissolution and accounting. This is not a complex account involving a variety of partnership transactions. (*Van Fleet-Durkee, Inc.* v. *Oyster* (1952) 112 Cal.App.2d 739 [247 P.2d 403]; see also *Gherman* v. *Colburn* (1977) 72 Cal.App.3d 544 [140 Cal.Rptr. 330].)

We are called upon to interpret the provisions of a partnership agreement with respect to the availability to a general partner of a management fee for services he performed. ■ We begin by stating the general proposition that the interpretation of a written instrument presents a question of law to be decided de novo by an appellate court. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Klingele* v. *Engelman* (1987) 192 Cal.App.3d 1482, 1485 [238 Cal.Rptr. 199].) In this case, the trial court also admitted and considered extrinsic evidence to assist in its interpretation. "Even where extrinsic evidence was offered in the trial court, a reviewing court is not bound by the trial court's findings if the extrinsic evidence is not in conflict, is not substantial, or is inconsistent with the only interpretation to which the instrument is reasonably susceptible." (*Okun* v. *Morton* (1988) 203 Cal.App.3d 805 [250 Cal.Rptr. 220].)

■ We conclude that this is an instance where the interpretation of the agreement is a question of law. It is clear that when read together, sections 8.1 and 8.2 do not permit a general partner to receive compensation from the partnership for management services performed in managing the partnership property, whether a broad or narrow interpretation is given to the provisions governing this area, absent agreement by the partners. While we agree with the trial court that the agreement is reasonably read to preclude payment of a management fee or "other compensation" for the "services"

set forth in section 8.1, that does not end the inquiry because, as the trial court found, Newman, and Lewis Podus before him, performed substantial services beyond those set forth in section 8.1. Podus spent full time at and managing the building before his death and did not receive additional compensation beyond his 50 percent limited partnership share. Newman spent one to two days per week, primarily designing and drawing plans for the medical suites as they were leased. Like Lewis Podus, Newman received no compensation other than his 16⅔ percent partnership share.

Our analysis of these two provisions causes us to conclude that the trial court is incorrect in restricting the services for which additional compensation is prohibited only to those services set forth in paragraph 8.1. Rather than prohibiting compensation to a general partner only for the specific categories and kinds of services explicitly set forth in paragraph 8.1, paragraph 8.2 prohibits compensation to the general partners for performing *any* services arising out of their partnership obligations. To read the provisions in such fashion is to fail to give each part of the agreement the consideration required.

The trial court's decision turns on the fact that certain services are set out, some concerning requirements flowing directly from acquisition of the building and preparations necessary for leasing medical offices. Yet there is no temporal limitation on the activities specified. Preparing suites for occupancy and negotiating tenancy terms would be necessary so long as the partnership owns and rents offices in the building. Thus, these services must be performed so long as required by the general partners, or any of them, to the extent necessary, without additional compensation. To find that other services such as general maintenance, repairs, decoration of common areas, and dealing with tenants' complaints and requests are without the ambit of paragraph 8.2 is to disregard the provision that "[t]he General Partners shall devote the required portion of their time to conduct the business of the partnership in an efficient and proper manner."

While this portion of paragraph 8.1 must be read in conjunction with the next sentence which states that neither of the general partners shall be required to devote his full time to the partnership business, the only reasonable construction of these provisions is that general partners may not be compensated for any services performed in managing the building, for that is the business of the partnership. The partners in their agreement recognize that more time and effort may be needed for managing the business of the partnership—the building—than either general partner may be called upon to give, by reason of the provision permitting them to retain the services of a management company, the cost of which is to be borne by the partnership.

These provisions must be read together with the statute governing remuneration to partners acting in the partnership business, Corporations Code section 15018, subdivision (f), which prohibits such compensation unless the partners agree otherwise. Paragraphs 8.1 and 8.2 do not admit of a construction that the partners have agreed that a general partner may receive additional compensation for working in the partnership business. Thus, whether or not paragraphs 8.1 and 8.2 may be read as prohibiting such compensation, they certainly do not permit it. In order for a general partner to be so compensated, the partners would have to agree, either by amending their written agreement, or by a course of conduct demonstrating such agreement. (*Busick* v. *Stoetzl* (1968) 264 Cal.App.2d 736, 738 [70 Cal.Rptr. 581].)

Extrinsic evidence is to the contrary. While Lewis Podus was alive, he performed myriad services, spending full time for no remuneration other than his 50 percent share of any profit. Newman, too, spent one to two days per week on partnership business for no additional remuneration other than his 16⅔ percent share of profits. Indeed, since Lewis Podus was a limited rather than a general partner, only the statutory, and not the partnership agreement, prohibition would apply to him.[2]

The next question, then, is whether the partners could agree that Newman be paid a fee of 5 percent of the building's gross income to manage the building full-time after Lewis Podus's death. Of course the answer is yes. The answer is less certain as to whether or not the partners did so agree. Newman claims he was compensated under the provision permitting the general partners to hire a management company and pay its fee, after agreement between Morris Podus and himself to do so. Alternatively, Newman claims that the partners agreed, Morris Podus explicitly and Penny Broffman implicitly, by not objecting when Newman and Morris Podus informed her of the decision to retain Newman full-time. Of course Newman claims he did not seek her assent, but was simply advising her out of courtesy because he assumed that only the general partners need agree on this subject. If the general partners could pay themselves, or either of them, a fee for managing the building simply by calling themselves a management firm, then the provision prohibiting or not permitting additional compensation would be a nullity. It is not reasonable that the partners would so intend, and their conduct while Lewis Podus was alive confirms that they did not so intend.

If Newman is not entitled to receive a fee as a management firm, is he otherwise entitled to receive one if the partners so agree? The answer is yes.

[2] By taking part in control of the business, Lewis Podus lost the limited liability afforded a limited partner and was liable as a general partner. (Corp. Code, § 15507.)

The evidence as to the existence of such agreement is open to conflicting inferences. Both Morris Podus and Newman testified they advised Broffman of their decision that Newman would take over management of the building and receive as compensation the 5 percent fee. Each testified that Broffman did not object; Morris Podus even testified the fee was her idea. Broffman testified she neither assented nor objected but remained silent when Newman told her his intention, and complained about not being told a few weeks later when Morris Podus told her about Newman's compensation. Newman further testified that he was not seeking Broffman's agreement; he was merely informing her as a holder of a 50 percent limited partnership interest. He did so because he understood the general partners alone, he and Morris Podus, were required to agree to such an arrangement. A limited partner had no voice in management of the partnership business.

After the first year, Podus and Newman agreed that no longer would Newman's compensation be limited to a maximum of $75,000 per year, but that he would receive the full 5 percent of the gross income. One month before, Broffman objected formally to the compensation arrangement. Podus and Newman proceeded nonetheless to implement the arrangement, believing that as the general partners they were so empowered. On such conflicting evidence the trial court found in Newman's favor on the declaratory relief cause of action. "Where the evidence is in conflict, the appellate court will not disturb the verdict of the jury or the findings of the trial court. The presumption being in favor of the judgment, the court must consider the evidence in the light most favorable to the prevailing party, giving him the benefit of every reasonable inference, and resolving conflicts in support of the judgment." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 278, p. 289.) We conclude the record supports the inference that even if Newman was not seeking Broffman's approval, it was reasonable for him and Morris Podus to assume that her silence was equivalent to her assent until she finally raised objection.

We thus have a situation in which the partnership agreement, reasonably interpreted, did not permit payment to a general partner for services to the partnership. The partnership agreement was never formally amended to permit such compensation. Under these circumstances, the express agreement between Morris Podus and Newman, and lack of objection from Broffman are sufficient evidence of an implied agreement both to meet the requirements of Corporations Code section 15018, subdivision (f), and the partnership agreement itself. By failing to object to the arrangement announced by Morris Podus and Newman, Broffman is deemed impliedly to have agreed to it and is estopped later to complain. (*Busick* v. *Stoetzl, supra,* 264 Cal.App.2d at pp. 738-739.) However, as in *Busick,* once Broffman objected not only to the removal of the limit from the management fee but

also to the payment of any management fee at all, no longer was there in effect either an express or implied agreement among all of the partners, or 75 percent of the profit interests in the partnership, to employ Newman for additional compensation to perform the business of the partnership—management of the building.

■ Broffman next contends that since Newman was not a licensed real estate broker, he could not legally receive a fee for negotiating leases and collecting rents because one performing such services for another for compensation is required by law to be a licensed broker. (Bus. & Prof. Code, § 10131.) The record discloses that certain of the management services performed by Lewis Podus before his death and subsequently by Newman included these real estate services. Newman was not so licensed. The record does not indicate what portion of Newman's work involved leasing space and rent collection. Statutory and case law in this area demonstrates that a general partner of a partnership performing such services for the partnership is performing them on behalf of another, not on his own behalf as a co-owner of property, as Newman urges. The statute which exempts certain persons from the license requirement, Business and Professions Code section 10133, was amended in 1985 *to add* a general partner of a partnership only where no special compensation is received. (*Froid* v. *Fox* (1982) 132 Cal.App.3d 832 [183 Cal.Rptr. 461]; *Stickel* v. *Harris* (1987) 196 Cal.App.3d 575, 592, fn. 13 [242 Cal.Rptr. 88].) Newman's argument that a general partner is acting with respect to his own property is supported by no authority and is contrary to law. While Corporations Code section 15025, subdivision (1) provides that a partner is a co-owner of partnership property, holding as a tenant in partnership, the incidents of that tenancy limit possession to partnership purposes. (Corp. Code, § 15025, subd. (2)(a).) Moreover, and dispositively, Corporations Code section 15026 defines a partner's interest in the partnership as his share of profits and surpluses, which is personal property. Thus, Newman may not avoid the application of Business and Professions Code section 10131 to some of his work in managing the building.

■ However, we reject Broffman's contention that his contract was illegal requiring judgment for Broffman. First, only a portion of Newman's activities involved leasing offices and collecting rent. Second, the failure to be licensed merely prevents one who is required to be from bringing or maintaining an action to recover compensation. Here, Newman is defending an action to recover compensation already paid to him. Newman neither brought nor maintained an action for compensation for which a real estate broker must be licensed. (Bus. & Prof. Code, § 10136.) In an analogous context involving the law prohibiting an unlicensed contractor from bringing and maintaining such a lawsuit (Bus. & Prof. Code, § 7031), the Court

of Appeal in *S. & Q. Construction Co.* v. *Palma Ceia Development Organization* (1960) 179 Cal.App.2d 364, 367 [3 Cal.Rptr. 690] held that the failure to obtain a license will bar a contractor from recovering for his work in an action brought by the contractor but will not bar him from offsetting as a defense amounts otherwise due him under the illegal contract. Such a "contract is not *malum in se* but merely *malum prohibitum*." (*Marshall* v. *Von Zumwalt* (1953) 120 Cal.App.2d 807, 810 [262 P.2d 363].) In *Schantz* v. *Ellsworth* (1971) 19 Cal.App.3d 289 [96 Cal.Rptr. 783], a case involving the real estate broker license requirement, the court of appeal cited *S. & Q. Construction Co.* with approval for the proposition that the courts will not enlarge upon the statute in imposing penalties for noncompliance. (*Id.,* at p. 292.)

Furthermore, contrary to Broffman's contention that the illegality taints the entire agreement rendering it completely void, where the contract on its face calls for hybrid services, some requiring a license and some not, and the contract can be interpreted in the particular case to require work for which no license is necessary, the licensing act does not apply. (*Executive Landscape Corp.* v. *San Vicente County Villas IV Assn.* (1983) 145 Cal.App.3d 496, 500, 501 [193 Cal.Rptr. 377].) In this case, Newman performed work some of which required a real estate broker's license and much of which did not. He is therefore not prevented from defending this case and the compensation he received. The real estate license provision imposes no such disability.

We turn to Broffman's contention that the trial court erred in permitting Newman to present evidence showing that his fee was reasonable, therefore causing no loss to the partnership. Broffman argues and presents authority pertaining to trusts for the proposition that a fiduciary who breaches his duties by self-dealing may not show that his activities were fair to and in the best interests of the other fiduciaries. (*Toedter* v. *Bradshaw* (1958) 164 Cal.App.2d 200, 208 [330 P.2d 688].) In the absence of agreement, express or implied, Broffman would be correct. However, we have determined the evidence will support a finding there was agreement to the initial compensation agreement. Thus the issue of and consequences for self-dealing as a breach of fiduciary duty need not be decided by the court. The trial court did not err.

In this connection, Broffman complains that testimony by a witness, John Marshall, as to his property management company's bid to manage the building, 8½ percent of the gross monthly rental income, violated the expert designation discovery statute, former Code of Civil Procedure section 2037. The trial court overruled Broffman's objection to the testimony on this ground because Marshall was a percipient witness as to his own bid,

not an expert on prevailing or fair or reasonable fees. Such evidence is admissible. Its weight, including the bona fides of such an offer, are questions of fact for determination by the trier of fact. (*Pao Ch'en Lee* v. *Gregoriou* (1958) 50 Cal.2d 502, 505 [326 P.2d 135].) Broffman has not raised as an issue that Marshall's testimony was prejudicial and therefore excludable on the ground that the bona fides of his bid were questionable. Therefore, whatever the dangers of permitting such evidence to be presented, we cannot say that its consideration by the trier of fact resulted in a miscarriage of justice requiring reversal. (Code Civ. Proc., § 475; Cal. Const., art. VI, § 13.)

■ We reach the same conclusion about Newman's counsel reading from Newman's answer to Broffman's complaint in his argument to the jury. We agree with Broffman that arguing to the jury that the partnership has a position, when it is evident that the partnership interests are equally divided on this issue, was both unwarranted and incorrect. This case undoubtedly presents a circumstance where it is appropriate to view the partnership as an aggregate rather than as an entity. (*Epstein* v. *Frank* (1981) 125 Cal.App.3d 111, 119 [177 Cal.Rptr. 831].) However, it is for the trial court to decide whether an argument is to be permitted. Since it is well established that an attorney may read a complaint including the prayer to the jury as part of his argument, there is no reason in law or logic why a defendant's attorney may not read from his answer. (*Beagle* v. *Vasold* (1966) 65 Cal.2d 166, 172 [53 Cal.Rptr. 129, 417 P.2d 673].) We observe that in fact the trial court ruled there was no evidence of the partnership's position and that argument as to the partnership's position was improper, instructing the jury to disregard it. The trial court then permitted the reading from the answer, including the prayer on the part of the partnership, that Broffman take nothing by her complaint. Because the trial court correctly advised the jury of the state of the evidence and instructed the jury to disregard argument as to the partnership's position, it is not reasonably probable that a different result would have been reached had the answer not been read. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

■ Notwithstanding the status of both express and implied agreement among all of the partnership interests with respect to Newman's first contract to manage the building, such agreement no longer existed once Broffman protested the employment of Newman to manage the partnership business for a fee. The general partners could agree only to retain a property management firm. We have previously discussed why the general partners could not agree between themselves that one or both of them could be the property management firm without breaching their fiduciary duty to their remaining partner, who held a 50 percent limited partnership interest. Similarly, in the absence of either express or implied agreement by Broffman to

continue paying a fee to Newman for managing the building, the partnership could no longer do so. Such would require the agreement of 75 percent of the profit interests of the partnership. That Newman continued to perform the same services did not give rise to any obligation to specially compensate him for those services on the part of the partnership in the absence of agreement. (*Vangel* v. *Vangel* (1953) 116 Cal.App.2d 615, 631 [254 P.2d 919]; *Combs* v. *Ritter* (1950) 100 Cal.App.2d 315, 318 [223 P.2d 505].) In essence, this case is much like *Busick* v. *Stoetzl, supra,* 264 Cal.App.2d 736. In that case, the court of appeal affirmed a trial court judgment ratifying an annual salary for one of the partners at a specific amount but ordering reimbursement to the partnership of salary received in excess of that amount. One of the partners asserted she had not assented to any salary. The court found implied agreement to the original salary by that partner through silence but no acquiescence in the salary increase, which she protested. We are persuaded by the logic of the result in *Busick,* and therefore conclude that it was impermissible for Newman to receive special compensation once a majority of the partnership interests no longer consented to his receipt of the management fee.

The judgment is reversed. Costs awarded to appellants.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied September 15, 1989, and respondents' petition for review by the Supreme Court was denied November 15, 1989.